**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

HENRY UNSELD WASHINGTON,    )
    )
    Plaintiff,    )
    )    Civil Action No.  3:19-cv-00196
    v.    )
    )    Magistrate Judge Lisa Pupo Lenihan
KANSKY DELISMA, WILLIAM L.    )
BOWERS, PHILLIP MAUST, HEIDI    )
SROKA, ROBERT SNYDER, R.    )    ECF Nos. 67, 69, 71, 79, 91
PESCHOCK, J. GIRONE, ELLIS    )
KAUFFMAN, RICHARD IRWIN,    )
ROXANNE PLAYSO, LARENE    )
DONNELLY, JAMES FETTERMAN,    )
RICHARD HUTCHINSON, DAKOTA    )
TESTA, ERIC TICE, and BRIAN P.    )
HYDE    )
    )
    Defendants.    )

**<u>MEMORANDUM OPINION ON DEFENDANTS' MOTIONS TO DISMISS</u>**

For the reasons stated herein, the Defendants' Motions to Dismiss Plaintiff's

Amended Complaint, ECF No. 43, as supplemented by Plaintiff's filings at ECF No. 60-

62 (hereinafter referred to collectively as the "Amended Complaint"), will be ruled

upon as follows:

<u>ECF No. 67</u>, by Defendants Delisma, Hutchinson, Testa, Kauffman, Fetterman

and Playso (collectively represented as the "Medical Defendants"), denied.

<u>ECF Nos. 69 and 71</u>, by Defendants Girone and Irwin, respectively, granted as

the allegations of Plaintiff's Amended Complaint are redundant with Plaintiff's claims

against those Defendants currently pending on Motion for Summary Judgment before

this Court in *Washington v. Barnhart et al.*, Civil Action No. 3:17-cv-00070 (the "2017 SCI Somerset Action").

ECF No. 79, by Defendants Bowers, Maust, Sroka, Snyder, Peschock, Tice and Hyde (collectively represented as the "Corrections Officers"),

(1) granted as to Defendants Maust, Sroka and Peschock as the allegations against them are redundant with those pending summary judgment in the 2017 SCI Somerset Action;

(2) granted as to any intended claim of (a) violation of the Religious Land Use and Inmate Protection Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, or (b) conspiracy; and

(3) denied in all other respects (with the exception of the RLUIPA claims) as to Bowers, Snyder, Tice and Hyde.

ECF No. 91, by Defendant Donnelly, granted as the allegation of Plaintiff's Amended Complaint neither states a claim against Donnelly nor suggests that one could be stated.

## I.  OVERVIEW, PROCEDURAL HISTORY AND COMPLAINT

As the Court has previously noted, Plaintiff Henry Unseld Washington ("Plaintiff" or "Washington"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") and currently confined at the State Correctional Institution at Somerset ("SCI Somerset"), is an African American male in his mid-seventies. Plaintiff commenced the present action - his latest *pro se* prisoner civil rights action - against 16 Defendants, SCI Somerset medical and correctional staff, in connection with often-generalized allegations of misconduct in violation of various

Constitutionally-protected rights while Plaintiff remains incarcerated at SCI Somerset from 2018 to date.  Eleven of the Defendants are also Defendants in the 2017 SCI Somerset Action, and most of the bases for the claims in this action arise from continuations of the same or similar circumstances/misconduct/inaction as alleged in the 2017 SCI Somerset Action for the period 2015 through sometime in 2018.  Indeed, Plaintiff has long been raising similar allegations of mistreatment against a succession of multiple correctional institutions.[1] Plaintiff expressly states that he uses his prior filings as "a template" for the next.  This is apparent from his pleadings in the several cases which have been before the undersigned.

Plaintiff's uninterrupted and increasingly redundant litigation derives, as he observes, from his perception that he "exist[s] in a perpetual [desire] to seek a remedy to the violations of his rights as well as a remedy to obtain immediate medical and physical needs, [while] Defendant[s], thus far have responded with deliberate

---

[1] Plaintiff has been in the custody of the DOC since 1978 and is quite familiar with filing suit to address the myriad forms of mistreatment that he has allegedly suffered in the many correctional institutions in which he has been incarcerated.  The following Opinion of the Third Circuit Court of Appeals is illustrative:

> [Washington's] long history in the Pennsylvania prison system has been characterized by repeated transfers, long stints in restricted housing and/or solitary confinement, and, he claims, sustained abuse. According to Washington, he was incarcerated in SCI Dallas . . . where he was repeatedly assaulted by staff members . . . . Following a transfer to SCI Greene, a "major assault" by prison staff left him with significant medical disabilities. This pattern of mistreatment, he avers, continued through transfers to SCI Mahanoy and SCI Retreat, where guards and prison staff – familiar with his "rabble rousing" tendencies, and angry about the grievances he filed regarding their friends in other institutions – continued to abuse him.

*Washington v. Grace*, 445 F. App'x 611, 613 (3d Cir. 2011). The present action is simply "yet another lawsuit in the ongoing series of litigation commenced by Washington against officials at the various state institutions where he is incarcerated." *Washington v. Grace*, No. 8-01283, 2010 WL 4919074 (M.D. Pa., Nov. 29, 2010).

Plaintiff's other actions before this Court have included *Washington v. Folino,* 11-cv-01046 (SCI Greene); *Washington v. Gilmore*, 15-cv-01031 (the "2015 SCI Greene Action"); and most recently *Washington v. Barnhart*, 17-cv-00070 (SCI Somerset).

indifferen[ce]." ECF No. 43 at ¶55.  That is, Plaintiff continues to bring the same/similar claims based on the same/similar conduct owing to his underlying chronic physical and mental health impairments, and his misunderstandings of both (a) the limitations of medical assistance legally required and/or medical relief possible and (b) other applicable legal standards governing both statements of a claim (by even a *pro se* plaintiff) and plausible liability for specific Constitutional-rights violations.  Plaintiff's apparent inability to accept these governing facts despite the Court's (and the correctional institutions') numerous attempts to address his complaints and explain medical and legal guidelines/constraints to him over several decades and actions, while regrettable, does not alter the bounds of either medical science or Constitutional liability.

### B.  Procedural History

Plaintiff initiated the instant *pro se* prisoner civil rights action, per 18 U.S.C. § 1983, with the filing of a Motion for Leave to Proceed *in forma pauperis* on November 13, 2019, which was granted on November 14th.  ECF Nos. 2, 3.  Plaintiff's Complaint was filed on November 14, 2019 and the Medical Defendants filed a Motion to Dismiss on April 22, 2020.  ECF Nos. 5, 32.  On April 23, 2020, the Court ordered Plaintiff to file – on or before May 26th - either a response in opposition to said Motion or an amended complaint. Plaintiff was advised that if he wished to file an amended complaint, then he should "include all of his claims against all of the defendants and should not refer back to his original complaint" as "any claims not included within it [would] be deemed waived." ECF No. 34.  Following the Court's May 26th receipt of a document titled

"Complaint" and naming only Defendant Delisma and a defendant who was not included in Plaintiff's original complaint - Gerald Puskar, the Court advised Plaintiff that the Court was unable to ascertain whether he intended the latest document as his stand-alone Amended Complaint or a (non-compliant) supplement to the document at ECF No. 5, and therefore the document would not be docketed.  Plaintiff was given another opportunity to comply with the Court's Order dated April 23, 2020.  He was further cautioned that "if Plaintiff elects to file an amended complaint then he should take care to include all of his claims against all of the defendants that he is naming in this lawsuit. He should also make sure to label it "AMENDED COMPLAINT" and include the instant case number on the top of it so that it is clear to the Court that is what he intends it to be. The Court will NOT accept supplements or piecemeal complaints. The amended complaint should be a stand alone document. It should in no way refer back to his previous complaint, and Plaintiff is again warned that any claim not included in it will be deemed waived. . . .  If Plaintiff elects to file an amended complaint then the Medical Defendants' Motion to Dismiss will be dismissed as moot . . . ."  ECF No. 41.

One June 1, 2020, Plaintiff filed an Amended Complaint, ECF No. 43.  By Order of June 29, 2020, the Court advised Plaintiff that his 13-page filing appeared incomplete, ending in mid-sentence.  The Court provided Plaintiff a copy of his filing and allowed him an extension within which to file a complete Amended Complaint.  ECF No. 58. Plaintiff replied not with an Amended Complaint as permitted but with three (3) 12-to-

19-page "Supplements", ECF Nos. 60-62.  Said Supplements were filed on July 10 and

July 15, 2020, with the last being filed outside the time permitted.

The five (5) Motions to Dismiss were filed by the Defendants at ECF Nos. 67, 69,

71, 79 and 91.  Plaintiff has filed Oppositions (the deadline for which was October 12,

2020)[2] at ECF Nos. 87, 88 and 101.  The Motions are now ripe for review.

### C.  Complaint

Plaintiff's hand-written, 56-page, 423-paragraph, four-part Amended Complaint,

begins with Section I Jurisdiction & Venue, Section II identifying Plaintiff, Section III

identifying Defendants,[3] Section IV Facts, Section V Exhaustion of Legal Remedies and

Section VI Legal Claims. Of importance are Sections IV and VI.  ECF Nos. 43, 60, 61 and

62 ("Amended Complaint").

In Section IV, Plaintiff lists the chronic ailments "on going for years" - and

continuing to be the basis of his allegations of deliberate indifference - as excruciating

digestive tract pain (sometimes specified as a digestive disability in response to his

---

[2] *See* ECF No. 84 (Order).

[3] Section III identifies the 16 Defendants named herein, as have the case docket, Amended Complaint and pleading captions, service entries, and other related materials.  A close reading of his 56-page Amended Complaint reveals, however, that Plaintiff writes in "Puskar" between lines at ¶22 in listing Defendants who assertedly violated his 8th Amendment rights and at ¶37 in listing Defendants who assertedly violated his 14th Amendment rights.  He also identifies Puskar at ¶166 as signing returned sick call request(s), ¶¶179-81 as "intercept[ing]"Plaintiff's request for blood pressure medicine, ¶185 as once denying pain medication/exam for Covid-like symptoms with mocking, racist overtones, and at ¶ 244 in asserting a blanket discrimination/equal protection claim.  Plaintiff complains in opposition to other Defendants' Motions to Dismiss that Puskar has failed to respond.

Puskar is not a Defendant in the Amended Complaint in this action - which Plaintiff was afforded no less than four (4) opportunities to file.  Because Puskar was not named/identified by Plaintiff despite this Court's repeated and express cautions that claims not included would be waived, Puskar is not – nor can he now be added as – a Defendant. *See* ECF Nos. 34, 41.

inability "to digest approx. 90% of" the prison food, *e.g.* ¶¶ 101, 409; often described in specific sick call incidents as "pain-n-discomfort"), Whipple's disease,[4] leg swelling, heart valve disease and chest pain, respiratory impairment, difficulty speaking aloud, difficulty remaining upright or awake, difficulty concentrating, insomnia, needing laser surgery in his right eye,[5] weight loss, elbow/angle/digit "deformity", dry skin, testosterone deficiency, semen discharge, rectum discharge, memory loss (ofttimes specified as "dementia", *e.g.* ¶101), muscle weakness, fatigue, nose bleeds, urethra stricture, peripheral numbness, irreversible foot fungus, unilateral loss of hearing, and bunk-related claustrophobia.  The "chronic ailments" are largely the same as those identified in Plaintiff's prior litigation, including the 2017 SCI Somerset Action against most of these same Defendants and the 2015 SCI Greene Action.

In Section VI, Plaintiff alleges violation of his rights under the Eighth, Fourteenth, and First Amendments, as well as a federal statute.[6]  In particular, Plaintiff

---

[4] According to the Mayo Clinic's website, Whipple's Disease is a rare but treatable bacterial infection that most often affects the joints and digestive system.  Whipple's Disease interferes with normal digestion by impairing the breakdown of foods, such as fats and carbohydrates, and hampering the body's ability to absorb nutrients.  It can also infect other organs, including the brain, heart and eyes.  Without proper treatment, Whipple's Disease can be serious or fatal.  However, it is extremely uncommon, affecting fewer than 1 in 1 million people.  www.mayoclinic.org (last visited on Feb. 28, 2019).  The evidence in Plaintiff's 2015 Greene Action, as the Court concluded on summary judgment, indicated that his chronic ailments were not attributable to Whipple's Disease. *See* ECF No. 168.

[5] As reflected in Plaintiff's 2015 SCI Greene litigation, Plaintiff had cataract surgery in this eye in 2014 and 2015.  As reflected in his 2017 SCI Somerset litigation, he was subsequently advised that no further surgeries could save the deteriorating vision in his right eye.  *See* ECF No. 96.

[6] As previously, Plaintiff sometimes inserts seemingly blanket, unsupported assertions of violation of his rights under the Religious Land Use and Inmate Protection Act ("RLUIPA"), 42 U.S.C. § 2000 *et seq*.  Section 3 of the RLUIPA provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that

alleges violations of his right to (a) freedom from cruel and unusual punishment under the Eight Amendment, (b) equal protection under the Fourteenth Amendment,[7] (c) free exercise of religion under the First Amendment, and (d) freedom from retaliation under the First Amendment; he also appears to intend to state a § 1983 conspiracy ("conspiracy-n-retaliation") claim.[8]

---

compelling governmental interest." *Holt v. Hobbs*, 135 S.Ct. 853, 860 (2015), quoting 42 U.S.C.§2000cc1a.

For the purposes of RLUIPA, a substantial burden exists where: "(1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007).  Plaintiff has not made allegations meeting either forced choice or pressured violation.  In addition, the government's compelling interest is evaluated in light of the importance of order, security, and the granting of deference to prison administrators, with "particular sensitivity" to security concerns. RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety". *Washington*, 497 F.3d at 283 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005)).  There is a compelling governmental interest in limiting the amount of property that any one inmate can retain in his cell.

As the allegations of Plaintiff's Amended Complaint fail to state or suggest a claim under RLUIPA, any intended claim against a Defendant for violation of RLUIPA will be dismissed.  *See also* 2017 SCI Somerset Action, ECF No. 99 (noting the same unsubstantiated assertions of violation of RLUIPA, pending on summary judgment where Defendants elected to forego filing a motion to dismiss).

[7] Although the vast majority of Plaintiff's allegations are directed to a claim of racial discrimination, his Amended Complaint contains an occasional reference to age discrimination.  To the extent these stray references were intentional rather than inadvertently retained from a "template", the Court notes here, as it has in prior actions, that Plaintiff's assertions neither support an age discrimination claim nor suggest the existence of any plausible basis for one.  Accordingly, these few entirely unsupported and randomly-appearing asssertions of age discrimination are disregarded. *Cf.* 2017 SCI Somerset Action, ECF No. 96 at 11, n. 13 ("Plaintiff also alleges that he is a member of a protected class based on his religious beliefs as well as his age. . . . However, because Plaintiff's Amended Complaint contains absolutely no factual allegations supporting an equal protection claim . . . on the basis of either religion or age, the Court concludes that Plaintiff alleges a racial classification.")

[8] As in the 2017 SCI Somerset Action, and following that "template" despite the Court's prior guidance regarding its often confusing, inappropriate and erroneous presentation of claims, Plaintiff's Amended Complaint is presented under the following "counts": Count One: Deliberate Indifference and Cruel and Unusual Punishment, Count Two: Equal Protection, and Count Three: Free Speech. A careful review of Plaintiff's Amended Complaint, however, reveals that these three counts consist of five often intermingled constitutional claims.

Plaintiff makes the following specific allegations against the 16 named

Defendants:[9]

**Dr. Delisma** – In Count I, Plaintiff alleges that on an almost once-monthly basis

(with dates specified for November-December 2018; February, April-June and August-

November 2019; and February, March and May 2020), Dr. Delisma saw Plaintiff in

response to his sick calls but denied him medical care for "pain-n-discomfort", for

"chronic health problems" (specifically including problems with eye sight, heart rate,

joint deformities, toe nails and feet, dementia, digestion and insomnia), and/or "Covid-

---

[9] The Court again reminds Plaintiff – who has had a great deal of experience and been provided a great deal of responsive correction/guidance in the filing of civil rights complaints – that sweeping, blanket assertions of Constitutional violations or their elements do not comprise a statement of claim under the Federal Rules of Civil Procedure.  Plaintiff's lengthy filings continue to run rampant with sweeping generalizations, as in, *e.g.*, pages 3 through 8 of the Amended Complaint, ECF No. 43, which are comprised primarily of the following assertions:

At all times relevant to the complaint unspecified Defendant at unspecified times denied Plaintiff unspecified medical care, including emergency or specialist care.  ¶¶ 24-25.  All Defendants said their actions were to penalize Plaintiff for filing grievances and litigation. ¶27.  "More than one Defendant told Plaintiff" they "wouldn't waste their time" helping him. ¶29.  Plaintiff's already fragile mental and physical health was exacerbated by unspecified Defendants' violations of his rights. ¶30. Unspecified Defendants at unspecified times did not provide Plaintiff the same medical care given to all other inmates, especially white inmates, and "singled out" Plaintiff for abuses. ¶¶38-40.  Unspecified Defendants at unspecified times violated his free speech and RLUIPA rights by not "provid[ing] . . . his religious practice" and prohibiting/impeding his ability to pursue redress by their antagonistic and "habitual response" to his legal actions. ¶¶41-51.  Unspecified Defendants at unspecified times showed knowledge of his litigations, called him a "paper pusher" and expressed denial of medical care in retaliation. ¶¶52-62.  Unspecified Defendants at unspecified times failed to provide unspecified care for various stated aspects of Plaintiff's "rapid progressive failing health" for retaliatory and/or racist reasons. ¶¶66-88.

The Court is compelled to note that Plaintiff's modification of allegations in successive litigations – *e.g.*, such that shortcomings in defendants' putative conduct identified to Plaintiff as the reason for dismissal of particular Constitutional claims are subsequently asserted as now also being committed - suggests that Plaintiff's continued failure to comply with basic pleading requirements may reflect more unwillingness than inability. *Compare, e.g.*, 2015 SCI Greene Action, ECF No. 96 (Report and Recommendation on Motion to Dismiss, dismissing with provision of legal requirements for each cause of action, 1st and 4th Amendment claims regarding retaliation, equal protection and free speech) *with* 2017 SCI Somerset Action, ECF No. 63 (Amended Complaint).

like symptoms". Delisma sometimes left Plaintiff "begg[ing] for medicine for pain", told him he needed to live with pain, walked him to the door, told him certain other staff members such as nurses "do not have the authority to prescribe medicines . . .", taunted Plaintiff and told him he was glad he was in pain. Delisma said he was denying medical care in retaliation for Plaintiff's "reputation for filing grievances and lawsuits". ¶¶ 122-23, 126-128, 143, 148-50, 156-58, 160-65, 172-73, 184, 191-94, and 197-99. Delisma once remarked that Plaintiff "was causing we black folk to look weak in the eyes of white people by continuing requests for medical care." ¶ 143. In Count II, Plaintiff alleges that Delisma "discriminated against Plaintiff intentionally and for no rational reason" and "successfully provided medical care for all other inmates, especially white inmates" but denied Plaintiff for "i.e., race, retaliation". ¶¶ 204-05. Finally, Delisma's retaliatory "rationale" for denying medical care constituted conspiracy. ¶ 291.

**Dr. Girone -** On January 15, 2018 Girone denied Plaintiff medical care for reasons of retaliation and racial discrimination. ¶¶ 224-25 (As Girone points out, this same claim is included in the 2017 SCI Somerset Action. ECF No. 69 at p. 9.) Girone's retaliatory reason for denying "sick call" medical care constituted conspiracy. ¶ 292.

**Dr. Irwin –** On February 19, 2019, during an eye exam, Irwin was indifferent to Plaintiff's loss of sight in right eye, eye swelling and pain when Irwin refused to refer him for laser surgery. Irwin said "you can go blind in both eyes for all I care" and his refusal to refer Plaintiff for surgery "allowed Plaintiff's lack of eyesight to get worst" in retaliation for Plaintiff's suing him. ¶¶ 144-45. Irwin had "no rational reasons" to deny

Plaintiff care that day, and "successfully provided all other inmates, especially white inmates, eye care" but denied Plaintiff for "i.e., race, retaliation".  ¶¶ 228-29.  Irwin's retaliatory reason for denying medical care constituted conspiracy. ¶ 294.

**Donnelly** – On July 2, 2018, Donnelly responded with indifference to Plaintiff's sick call of inability to sit up right and struggle to speak with intestinal pain and discomfort.  Donnelly denied Plaintiff his requested pain medication, failed to touch him to exam him, said he had "Obama Care", left the room "to confer with another medical professional" and then returned and dismissed Plaintiff. ¶114.  Donnelly denied medical care that day for "no rational reason" and "successfully provided care to all other inmates" but denied Plaintiff for i.e., race, retaliation.  ¶¶ 232-33.  Donnelly's "sick call" conduct was "conspiracy-n-retaliation".  ¶ 296.

**Hutchinson** – On January 18, 2019, Hutchinson denied Plaintiff medical care for his swollen ankles and bloodied socks due to open sores on his feet caused by chronic foot fungus.  Hutchinson sent Plaintiff away without pain medication, and said: "You are suing me, I would be a fool to help you, I am calling the shots now, you can get out of my office, Mr. Washington, . . . ." ¶¶ 137-38.  Hutchinson denied medical care that day for "no rational reason" and "successfully provided care to all other inmates" but denied Plaintiff care for i.e., race, retaliation. ¶¶ 236-37.  Hutchinson's conduct "during sick call" was "conspiracy-n-retaliation".  ¶ 298.

**Fetterman** – On December 20, 2018, Fetterman failed to provide care for Plaintiff's diarrhea, foot sores "and other chronic health problems", and went to consult Playso in the next room, who said not to give Plaintiff anything.  On December 24, 2018,

Plaintiff again saw Fetterman – this time for "intestinal gripe", reduced eye sight and "inability to speak aloud", and Fetterman went to Hyde's office.  Then Plaintiff overheard Fetterman, Hyde and Playso in the next room and they "acting in concert" denied him care in retaliation for suing Hyde and Playso, with Fetterman "snapp[ing]", swearing and telling Plaintiff to "just go". ¶¶ 131-35.  In January, 2019, Fetterman again denied Plaintiff care for over-night diarrhea "and other chronic health problems", "not even medicine for pain", and told Plaintiff to "get out", that he "deserve[d] to be in pain" and might as well sue Fetterman too. ¶ 136.  Fetterman "successfully provided care to all other inmates" but denied Plaintiff care on December 20 and 24, 2018 for i.e., race, retaliation. ¶¶ 234-25. Fetterman's sick call conduct was "conspiracy-n-retaliation".  ¶ 297.

      **Testa** – On March 22, 2019, Testa denied Plaintiff medical treatment for pain and diarrhea disrupting his sleep after consulting, and in concert, with Playso, who told Testa not to give Plaintiff anything and to send him away, which Testa did without an exam or medicine for pain. ¶¶ 146-47.  On April 12, 2019, Testa went next door and "conferred with her co-medical professional" who said to send Plaintiff away although his eye was swollen shut and throbbing.  Testa "began to scold Plaintiff in racist overtones, gave Plaintiff the middle finger" and shouted at him to "get out" without an exam or pain medicine. ¶ 151. Testa also denied Plaintiff care for intestinal pain and sleep disturbance on June 17, 2019, this time in concert with Delisma. ¶159.  Between March and June 2019, Testa denied medical care for "no rational reason" and "successfully provided care to all other inmates" but denied Plaintiff for i.e., race,

retaliation.  ¶¶ 238-39.  Fetterman's sick call conduct was "conspiracy-n-retaliation".  ¶ 299.

**Kauffman** – On November 6 and 20, and December 4, 2018; February 4, 2019 and January 2, 2020, Kauffman denied Plaintiff medical care and/or pain medication with a racist remark (specifically, "all you Black men ever do is complain" and "you Black men have no conscience") and/or in retaliation.  On November 6, Plaintiff's eye and toenails were discharging "pus-n-blood", Plaintiff "begged for medicine for pain" and Kaufmann said "You're in pain, it couldn't happen to a better person".  On other occasions, Kauffman declined treatment for other chronic ailments.  ¶¶ 115, 120-21, 124-25, 141-42, 169.  On January 28 and 29, 2020, Kauffman denied medical care for Covid like symptoms as well as "chronic ailments" in concert with Playso and Delisma.  Specifically, Playso denied Plaintiff care on January 28th and Delisma said he would see Plaintiff the next day, but on January 29th Delisma designated Kaufmann to see Plaintiff and Kaufmann then denied Plaintiff care in express retaliation. ¶¶ 170-177.  On dates between November 2018 and January 2020, Kauffman denied medical care for "no rational reason" and "successfully provided care to all other inmates" but denied Plaintiff for i.e., race, retaliation.  ¶¶ 226-27.  Kauffman's sick call conduct was "retaliation, conspiracy-n-free speech".  ¶ 293.

**Playso** – On December 20 and 24, 2018, March 22, 2019, and January 28, 2020, Playso "successfully for no rational reasons targeted, retaliated, intentionally discriminated against Plaintiff" and while he "successfully provided medical care to all other inmates" denied Plaintiff medical care for i.e., race, retaliation. ¶¶ 230-31.

Plaintiff then references his allegations against Playso to other paragraphs in which he has alleged that Playso denied/told or conspired with others to deny Plaintiff medical care (*i.e.*, Fetterman, Hyde, Testa).  Playso's sick call conduct was "conspiracy-n-retaliation".  ¶ 295.

**Hyde** – On or about January 1, 2019, Hyde "discarded" a sick call request "by returning it" to Plaintiff in "incoming mail" rather than scheduling Plaintiff to be seen by medical professionals the next day as he should. ¶¶139-40.   Hyde also returned sick call requests on September 27, 2019 and January 24, 2020. ¶¶ 178, 182-83.  Between May 6th and 8th, 2019, Hyde "probably discarded" a properly-completed sick call request for ear pain/swelling/hearing loss; because the "medical department" did not respond to "numerous calls" made by "POD officers", Plaintiff had ear swelling/hearing loss for a month. ¶¶ 152-55.  On December 5, 2019, Plaintiff was called to meet with Hyde who denied him medical care/pain medicine and told him to stop submitting sick calls. ¶167.  On February 10, 2020, Plaintiff was called to Hyde's office with "mockery-n-racist overtones" when he had "Corona like symptoms" and "chronic ailments" and denied care by a nurse; when Plaintiff "begged for medicine for pain", the nurse said "she did not have the authority" to prescribe medicine or "do the things [Plaintiff was] asking for".   Hyde witnessed this and "did not take steps to correct those abuses".  On his way back to his unit, two nurses separately examined him and told Plaintiff he had a fever and should have medicine, and Plaintiff had to rest in a doorway.  ¶¶ 186-90.  Nine to ten times between December 24, 2018 and March 25, 2020, Hyde retaliated and discriminated against Plainiff while "successfully providing all other inmates,

especially white inmates access to sick call" and recommendation to specialists. ¶¶ 242-43. Hyde failed to correct medical professionals who denied Plaintiff care, and unidentified "medical professionals" on unidentified date(s) talked to him in such a "racist-n-bigoted" way, with Hyde encouraging it and swearing, that Plaintiff was incontinent in fear of his life from defendants. ¶ 394 Hyde's "[denial of] access to care" was "conspiracy-n-retaliation". ¶ 301.

**Tice** - In Plaintiff's November 7, 2018 interview with Warden Tice regarding Plaintiff's sick calls and ailments, Tice "responded in tone of rebuke with racist overtone" and with the "same event continuing to date" (including specifically November and December 2018 and January 2019), Tice dismissed the seriousness of Plaintiff's ailments and denied him medical care. ¶¶ 116-19. On December 19, 2018, Tice disregarded Plaintiff's foot fungus/blood and said his denial of medical care (and his denial of Plaintiff's religious practice and prison athletic employment) was in retaliation. ¶¶ 129-130. On unspecified dates between November 7, 2018 and January, 2019, Tice "took part in" and "encouraged" in unspecified ways unspecified medical professionals' unspecified "mistreatment" of Plaintiff. ¶¶ 240-41. Between November 7, 2018 and July 19, 2019, Tice expressly refused to comply with Plaintiff's settlement right to religious materials, and on December 31, 2019 (and "continued until February 20, 2020"), Tice denied Plaintiff religious practice/materials for reasons of retaliation and race. ¶¶ 254, 268, 280-81. Tice's "duty to protect, [was] conspiracy-n-retaliation". ¶ 300.

**Maust** – From "on or near" August 2, 2017, and the "same event: continuing to date", Maust, SCI Somerset Chaplin, has continuously denied Plaintiff religious literature and "spoke to Plaintiff in gesture of contempt-n-as-if having a want to physically strike Plaintiff, using words ladened with racist overtones causing Plaintiff to fear for his life", causing Plaintiff's inability to practice his religious beliefs for reasons of race, religion and retaliation.  ¶¶ 211-12, 252, 261-63 (with verbatim repetition of paragraphs).  "Ongoing to date" Maust has "provided all other inmates, especially white inmates and/or non-Children of the 'Sun' church believers with provisions 'free of charge' irrespect [*sic*] of the amount of religious literature" they want or whether it is in the main library; but on unspecified dates Maust – despite having "readily available access to an inexhaustible supply" - denied Plaintiff's request for religions literature "not in main library" on the basis that it "concerned historical facts" of Africa/Africans and was not "religious literature". ¶¶ 287-90.

**Snyder** -  On/since April 8, 2017 ( "ongoing until reassignment"), Security Captain Snyder for reasons of retaliation and race aided/abetted two whites' April 2017 theft of Plaintiff's religious books from a cart (when Plaintiff's personal property was being moved "into [his] new assigned cell on the top floor") by failing to question/criminally charge those individuals or reimburse Plaintiff when Plaintiff informed him.  Snyder made racist remarks and declared this was retaliation.  ¶¶ 215-16, 284-86, 420.

**Bowers** – "On or near October 6, 2017" and "same event which continued until February 2019", Bowers was deliberately indifferent to Plaintiff's recurring nightmares,

"psychological affliction" and advancing dementia.  Plaintiff's mental illness was increased because (prior to February 2019) Bowers did not change Plaintiff's cell location, despite unspecified psychologist's numerous reminders to do so "on or near January 1, 2018" and other unspecified dates.  Bowers did this while "continuously moving young-n-healthy inmates, especially white inmates" and avowing a racist motive.  ¶¶105-112, 206.  On April 9, 2018, Bowers directed Plaintiff to find a fellow inmate willing to take Plaintiff's current cell. ¶113. Bowers "assigned all other inmates, especially white inmates, to the cell of their choice" and denied Bowers for "race, retaliation."  ¶¶ 207-08.  At unspecified times from October 16, 2017 through December 10, 2019, Bowers denied Plaintiff's religious practice by - "on a daily basis" for "700 straight days" - denying his right to extra property inside his cell for reasons of "race, retaliation" in violation of "free speech-n-RLUIPA".  ¶¶ 209-10, 253, 282-83. At an unspecified time, Bowers removed Plaintiff from "D-Code status" (Special Needs), moved him to another unit (where he suffered sexual assault and harassment), and stopped his access to the Special Needs gym in retaliation and race discrimination. ¶421.[10]

**Sroka** – On July 16, 2015 and "ongoing until reassignment" (including October 14, 2015, February 10, 2016 and August 22, 2016), Grievance Coordinator Sroka failed to respond to grievances, "took exception" to "some submitted three-n-four times", refused to submit grievances that requested money damages and advised Plaintiff that

---

[10]  This "paragraph" is an entire full, hand-written, tightly-spaced and small print page in Plaintiff's "Declaration."  ECF No. 62 at pp. 18-19 (pp. 54-55 of Plaintiff's consecutive numbering).

"filing grievances requesting monetary relief would be a waste of [his] time". Sroka was "deliberately indifferent to [Plaintiff's] serious health problems" when he showed her his fungus and bloody toes, flaky-skinned legs, and deformed elbows, ankles and digits. This was retaliation and race discrimination. ¶¶98-104 (multiple paragraphs beginning "same interview" or "same event"), ¶¶213-14 , 278 -79.

Peschok - From April 11, 2018 and to date, including the 2019 football season, and "ongoing until reassigned", Activities Specialist Peschok acted in retaliation and race and age discrimination by giving Plaintiff "undesirable" and "menial" assignments (*e.g.*, floor sweeping and folding jerseys) in his prison athletic program employment, bypassing Plaintiff for more/other athletic game officiating work, and giving him a negative job report. Peschok said she did not care about basketball. Peschock acted in retaliation "solely because her pet favorite official did not want to" do a job requiring "more physical movement". Other officials are mostly Philadelphia-native, homosexual, members of a "click" and Peschock "willingly or unwillingly" aided/abetted that clique. ¶¶ 217-23; 400-404.

The remainder of the Amended Complaint consists of Section VII Injury, Section VIII Prayer for Relief,[11] and Section IX Declaration (the last being not a Declaration but

---

[11] Plaintiff's prayer for relief is again similar to that in his prior 2015 and 2017 actions. For example, in his 2015 SCI Greene Action, in addition to compensatory and punitive damages, Plaintiff requested laser eye surgery at Will's Eye Clinic in Philadelphia, Pennsylvania; medical care by an ophthalmologist and podiatrist at John Hopkins University Hospital; placement in John Hopkins University Hospital until he is "convinced all of his health problems have been cured or corrected"; sick call visits and medication free of charge; choice of diet supplements; doctor visits three days per week without having to submit a sick call request; each sick call request responded to in one day; and no limit on in-cell storage space. See 2015 SCI Greene Action, ECF No. 76, ¶¶ 251-58.

another 11 pages of repeated and additional allegations making diverse claims against diverse defendants at ¶¶ 374-423 – which allegations are incorporated in the outline of claims against each Defendant above).[12]

## II.  STANDARD OF REVIEW

### A.  General Standard

The United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary

---

[12] Plaintiff's "Declaration" beginning at p. 44 of his Amended Complaint recounts that when Plaintiff was in SCI-Greene in the Restricted Housing Unit from August 2009 to July 2015, he endured six years of "hideous sexual-n-physical assaults" which he reported to renown important people, politicians and lawyers.  This allegedly gave rise to the cross-institutional conspiratorial persecution and retaliation that is "still ongoing to date", and in which every Defendant is/has been involved.  It is for this reason that correctional personnel deny his medical care, religious materials and grievances.  This section again recounts Plaintiff's chronic ailments, including dementia, and includes a further blanket assertion of conspiracy.  ECF No. 62.

element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117-18 (3d Cir. 2013); *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

When considering *pro se* pleadings, a court must employ less stringent standards than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). In a § 1983 action, the court must "apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). When dismissing a claim pursuant to Fed. R. Civ. P. 12(b)(6) in a civil rights case, the Court must permit a curative amendment unless it would be inequitable or futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

### B. Consideration under 1915(e)(2)(B)

The Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint

in a civil action in which a prisoner is proceeding *in forma pauperis* (28 U.S.C. § 1915(e)(2)) or seeks redress against a governmental employee or entity (28 U.S.C. § 1915A). The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). This action is subject to *sua sponte* screening for dismissal under both 28 U.S.C. §§ 1915(e)(2) and 1915A because Plaintiff is a prisoner proceeding *in forma pauperis* and seeking redress from governmental officers or employees.  The legal standard thereunder for dismissing a complaint for failure to state a claim is identical to the legal standard set forth above as to a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)*.*

### III. ANALYSIS

#### A.  Pleading Inadequacies Under Rule 8

Several Defendants' Motions to Dismiss request that the Court dismiss or strike Plaintiff's Amended Complaint for failure to comply with Rule 8(a) of the Federal Rules of Civil Procedure. *See e.g.,* ECF Nos. 67, 80, 92.  In particular, Defendants assert, not without cause, that they should not be required to sort the actual (or potential) claims against them from the convoluted small-print threads of Plaintiff's four (4) prolix, repetitious, often overly-generalized and confusing Amended Complaint filings.  As they duly note, the Rule 8 standard requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief and that each averment be concise, and direct. Thus, dismissal of a complaint may be appropriate

where it is illegible or incomprehensible. *See, e.g.*, ECF No. 80 at 8 (providing extensive citations). Furthermore, dismissal under Rule 8 has also been held proper when a complaint left the defendants having to guess what of the many things discussed constituted a cause of action or where the complaint was so rambling and unclear as to defy response. *Id.*

Yet, as Defendants are aware, the pleading standard applicable to Plaintiff is a lenient one. The Court has, therefore, taken the time and care to do much of the outlining and sorting work for Defendants and, as Section I reflects, the Amended Complaint is – ultimately - not "incomprehensible". The Court therefore declines to dismiss the Complaint or to require Plaintiff to refile a more compliant Complaint. It cautions Plaintiff, however, that given his litigation experience and demonstrated ability to modify subsequent pleadings in his favor in response to the Court's rulings in his successive actions, the Court will be inclined to be less extraordinarily lenient with regard to future filings. *Cf. supra* n. 9.

**B. Dismissal of Individual Defendants**

**1. <u>Dismissal as Entirely Redundant Claims</u>**

**Girone** - As detailed *supra*, Plaintiff's only specific factual allegation against Girone is that on January 15, 2018, Girone denied Plaintiff medical care for reasons of retaliation and racial discrimination and that this also constituted conspiracy. ECF No. 61, ¶¶ 224-25, 292. As Girone (who attests to having left employment at SCI Somerset in February, 2018) points out, this threadbare assertion is facially insufficient to state or plausibly suggest any constitutional claim. *See* discussions at Section III, *infra*).

Moreover, the identical claims premised on the same sick call are included in the 2017

SCI Somerset Action and presently pending on summary judgment.  ECF No. 70 at pp.

7-9 (citing that Action, ECF No. 43, ¶¶ 225-226); ECF No. 89 at p. 4 ("review of each

operative complaint plainly reveals that Plaintiff asserts the same First, Eighth, and

Fourteenth Amendment claims in each matter").  *Cf. Banks v. County of Allegheny*, 568

F.Supp.2d 579, 589-590 (2008) (dismissal of duplicative and repetitive claims); *Abdel-*

*Bachir v. U.S. Attorney General*, 2017 WL 8219530 (S.D. Ohio Oct. 24, 2017), report and

recommendation adopted at 2018 WL 1256366. *Cf. also* n. 14, *infra*.

While Plaintiff asserts in his Response in Opposition that he intends to state a

supervisory claim against Girone, and disavows an intent to repeat the January 15, 2018

conduct claim made in his prior action, Girone observes that any such supervisory

claim is now time barred and, Plaintiff having made no other allegations against him in

any of his Amended Complaint filings, any additional claim in this litigation has been

waived pursuant to the Court's express cautions and Orders.  *See* ECF Nos. 87, 89, 98,

100; *see also* ECF Nos. 34, 41 (Orders).[13]

---

[13] As Girone also correctly notes with regard to Plaintiff's attempts, in responses to the Motion to Dismiss, to impermissibly raise arguments based on claims that were not pleaded in the Amended Complaint:

> The Third Circuit has held that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pennsylvania ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F. 2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054, (1984)). Moreover, a prisoner plaintiff should not be able effectively to amend a complaint through any document short of an amended complaint. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 109 n. 9 (3d Cir. 2002). Accordingly, any claims that a plaintiff has not raised in the complaint, but attempts to raise in opposition to a motion to dismiss, should not be considered by the Court.  See *Everett v. Coleman*, 2016 U.S. Dist. LEXIS 98864, *5-6 (W.D. Pa. 2016) ("[A]ny claim raised for the first time in Plaintiff's responses to the motions to dismiss are irrelevant as they are outside the scope of the amended

**Irwin** – As detailed *supra*, Plaintiff's only specific factual allegation against Dr. Irwin is that when Plaintiff was seen for an optometrist eye exam on February 19, 2019, Irwin was indifferent to Plaintiff's loss of sight in his right eye, eye swelling and pain when he continued to refuse – in retaliation and for reasons of racial discrimination - to refer Plaintiff for further laser surgery".  ECF Nos. 60-61, ¶¶ 144-45, 228-29.  And Irwin's conduct constituted conspiracy.  ECF No. 62, ¶ 294. Plaintiff's sole factually-specific allegation against Irwin in this action, then, is the addition of a subsequent exam date on which Irwin continued to deny Plaintiff's request for further surgery to his right eye.  Evidence regarding the medical basis for that denial and the related constitutionality of Irwin's conduct are pending on summary judgment before this Court in Plaintiff's 2017 SCI Somerset Action.  Plaintiff clearly premises his claim on this particular continued inaction under the same medical circumstances, attributes it to the same illegal motives, and does not suggest any other new/differing basis for a claim against Irwin.  This narrow and limited allegation merely supplements the same claim against the same Defendant already raised and pending; resolution turns on determination of the same question, *i.e.*, the medical appropriateness and/or sufficiency of  Irwin's care in the given circumstances; and the relief sought in that action is

---

complaint.")

ECF No. 89 at 1-2.  The Court again notes, moreover, its express, repeated Orders in this case with regard to waiver of claims not included in the Amended Complaint.

identical to that sought herein.  *Cf.*  2017 SCI Somerset Action, ECF No. 180 at pp. 7-8, 13-14. [14]

**Sroka** – Similarly, and as detailed *supra*, Plaintiff's allegations against Sroka are:

(1) On July 16, 2015 and "ongoing until reassignment" (including October 14, 2015, February 10, 2016 and August 22, 2016), Grievance Coordinator Sroka continued to fail to respond to grievances requesting monetary relief and "took exception" to repetitive submissions "on the same issue", advising Plaintiff that they "would be a waste of [his] time".

(2) Sroka evidenced deliberate indifference to serious health problems – specifically Plaintiff's discolored toenails discharging pus and blood, flaky-skinned legs from athlete's foot fungus, deformed elbows, ankles and digits, and having to repeat his words – by refusing to respond to his grievances.

(3) Sroka's conduct was in retaliation and for racially discriminatory reasons. ¶¶98-104 (multiple paragraphs beginning "same interview" or "same event"), 213-14 , 278 -79.

As with Defendant Irwin, Plaintiff clearly premises his claims on the identical "ongoing" conduct/inaction (grievance-processing to a specific standard other than that Plaintiff desires, on dates included in his 2017 SCI Somerset Action), attributes it to the same continuing illegal motives, and does not suggest any other new/differing

---

[14] *Cf. also Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999) (noting that *res judicata* prohibits successive suits against the same defendant based on the same underlying events).

basis for a claim against Sroka.  *See* ECF No. 80 at 7-8 (noting that Plaintiff's complaints in the 2017 and 2019 SCI Somerset actions repeat the claims).[15]

**Maust** -  As detailed *supra*, Plaintiff's generalized allegations against Chaplin Maust are that, since about August 2, 2017, Maust has continued to deny Plaintiff religious literature in violation of his rights of free speech, in retaliation and for racially discriminatory reasons.  ¶¶ 211-12, 252, 261-63 (with verbatim repetitions).  He further asserts that Maust spoke to him with unspecified words of contempt or "racial overtones" and made an unspecified threatening gesture, and that Maust continues to provide inmates of other races and religions (indeed, "all inmates") unlimited free access to requested religious materials. ¶¶ 287-90.

In the 2017 SCI Somerset Action, Plaintiff makes the same claim against Maust - that he has not been allowed to keep sufficient numbers of boxes of property in his cell to read the number of books his religion, which he himself invented, requires – and attributes Maust's conduct to the same illegal motives. *See generally* ECF No. 80 at 7-8. The allegations that Maust spoke or gestered at an unspecified time in an unspecified threatening and/or racist way are – as has been explained to Plaintiff in prior litigations

---

[15] The Court also notes that it is well-settled that a prisoner has no due process rights that are implicated by the prison grievance system, as access to a prison grievance procedure is not a constitutionally-mandated right and confers no liberty interest on a prisoner. Allegations about mishandling the grievance system thus fail to state a cognizable claim. *Williams v. Armstrong*, 566 Fed.Appx. 106, 108-09 (3d Cir. 2014); *Fears v. Beard*, 532 Fed.Appx. 78, 81 (3d Cir. 2013).

- legally insufficient to state any claim other than that which is duplicative of his prior claim, pending on summary judgment. *See* discussion, Section III, *infra*.[16]

**Peschock** – As detailed *supra*, Plaintiff's claim against Peschock is that beginning April 11, 2018 and continuing thereafter, Peschock retaliated and discriminated against Plaintiff in assigning prison athletic officiating and other duties.  As with the Defendants above, Plaintiff premises his claims on the same ongoing conduct pending on summary judgment in the 2017 SCI Somerset Action, attributes it to the same continuing illegal motives, and does not suggest any new/differing basis for a claim. Indeed, Plaintiff's additional factual allegations in this action are contrary to his claim of retaliatory or discriminatory motive, as he attests that Peschock was motivated "solely" by favoritism for another inmate and "willingly or unwillingly" advanced the interests of a clique of which Plaintiff was not a member. *See supra,* Section I.

Therefore, all claims against Defendants Girone, Irwin, Sroka, Maust and Peschock are dismissed as redundant.

### 2. <u>Dismissal for Failure to State a Claim</u>

**Donnelly** – As detailed *supra*, Plaintiff's only specific factual allegation against Donnelly is that on July 2, 2018, Donnelly responded to Plaintiff's sick call regarding intestinal pain and discomfort impeding his inability to sit up right and speak. Donnelly denied Plaintiff his requested pain medication, did not exam him, said he had

---

[16] *Compare* Section I supra, noting Plaintiff's additional claims against Bowers (*i.e.,* Bowers removed Plaintiff from "D-Code status" (Special Needs), moved him to another unit (where he suffered sexual assault and harassment), and stopped his access to the Special Needs gym in retaliation and race discrimination.

"Obama Care", left the room "to confer with another medical professional" and returned and dismissed Plaintiff. ECF No. 43 at ¶114.  The Court notes that Plaintiff's lengthy and frequent history of abdominal/intestinal pain and discomfort of this degree, and the frequency of his sick call registration of those complaints, is reflected in Plaintiff's own filings; and the allegation does not suggest circumstances which would give rise to an 8th amendment violation by Donnelly (*see* discussion *infra*, Section III(D)). The allegation is patently insufficient to state a claim for cruel and unusual punishment in the form of intentional denial of treatment for a serious medical condition for non-medical reasons.  In addition, Plaintiff's recitation of his blanket and *pro forma* allegations that Donnelly denied him medical care that day for retaliatory and/or racially discriminatory reasons and was part of a multi-institutional conspiracy against Plaintiff, absent any factual support whatsoever, is similarly insufficient to state or suggest any such claim.  *See Lanzaro*, 834 F.2d at 347; *Pearson* at 538; *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).

Therefore, Donnelly's Motion will be granted and he will be dismissed.

### C.  Dismissal of Conspiracy Claims against Correction Defendants

In order to set forth a § 1983 cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir.1992); *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989). The essence of a conspiracy is an agreement or concerted action between individuals. *See D.R. by L.R.*, 972 F.2d at 1377. A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some

understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. *Id*. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir.1985). A plaintiff cannot merely rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405, n. 16 (3d Cir.1991). *See also Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*) (A conspiracy claim "must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal.").

In the present case, Plaintiff has failed to allege any facts whatsoever as to the remaining Corrections Defendants beyond his conclusory blanket statements of conspiracy that would plausibly suggest a meeting of the minds, agreement or plan between any of these Defendants. Because nothing in Plaintiff's Amended Complaint remotely suggests that Plaintiff has, or could raise and substantiate, any conspiracy claim against them, this claim will be dismissed to the extent intended as against the remaining Corrections Defendants.[17]

### D. Eighth Amendment Denial of Medical Care

The Supreme Court has admonished that "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny. . . ." *Whitney v. Albers*, 475 U.S. 312, 319 (1986). "'After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment

---

[17] The Court distinguishes Plaintiff's conspiracy claim against the remaining Corrections Defendants from the remaining Medical Defendants; as to the latter he specifies some facts that are sufficient, under the extremely liberal standard being applied, at this stage of the proceedings. *See supra* Section I.

forbidden by the Eighth Amendment.'" *Id.* (quoting *Ingraham*, 430 U.S. at 670) (ellipsis in original). The Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Under the Eighth Amendment, prison officials are prohibited from exhibiting deliberate indifference to serious medical needs of inmates. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To set forth a cognizable claim for deliberate indifference to a serious medical need, a plaintiff must allege (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

As in Plaintiff's previously-filed actions, Plaintiff asserts that he has, for decades, been experiencing a lengthy list of chronic "serious health problems". He asserts that Defendants impeded his access to or refused to provide care, or what he believes would be appropriate care, in response to the sick calls that Plaintiff submits with extreme frequency. On occasions when he was seen by Medical Defendants, Plaintiff alleges that they have responded to his pleas for medical care, including his requests for pain and/or other specific medications and specialists, by telling him to get out, cursing at him, giving him the middle finger, or making racist comments. Plaintiff asserts that Defendants refused to provide constitutionally adequate medical care to penalize

Plaintiff for filing complaints, in various forms, against Defendants, personally, as well as other medical and correctional officers.[18]

With respect to the first requirement, a medical need is "serious," for Eighth Amendment purposes, if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)). Whether a medical need is of the serious nature contemplated by the Eighth Amendment "may also be determined by reference to the effect of denying the particular treatment." *Lanzaro*, 834 F.2d at 347. Thus, a medical need is similarly "serious" if "unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care," or if "denial or delay causes an inmate to suffer a life-long handicap or permanent loss." *Id.* (citations omitted).

As in his 2015 SCI Greene Action and 2017 SCI Somerset Action, Plaintiff alleges that he has "several serious health problems" that have been "ongoing for years". The health problems which Plaintiff describes as "chronic ailments" include extreme pain and discomfort throughout his digestive tract and diarrhea caused by most foods served to inmates, Whipple's Disease, difficulties concentrating, breathing, speaking, remaining upright and awake, loss of vision/near blindness in his right eye, loss in

---

[18] In most respects, Plaintiff's Eighth Amendment allegations mirror those he has raised against medical staff at other correctional institutions in prior "template" actions.

weight, extreme dry skin, deformed ankles, elbows and fingers, penis and rectal

discharge, memory loss and dementia, muscle weakness, nose bleeds, testosterone

deficiency, urethra stricture, heart attack symptoms such as chest pain, respiratory

difficulties, lower bunk claustrophobia, peripheral numbness, and irreversible foot

fungus. Assuming the truth of these allegations, here, as in prior actions, Plaintiff has

sufficiently alleged a serious medical condition to survive a motion to dismiss. *See e.g.*,

2017 SCI Somerset Action, ECF No. 96 (Report and Recommendation on Medical

Defendants' Motion to Dismiss) at p. 7 (concluding Plaintiff sufficiently stated an Eighth

Amendment denial of medical care claim based on "excruciating non-stop"

gastrointestinal pain and Court thus did not need to further consider other conditions at

that time).

The Court observes, however, that the complete record evidence of Plaintiff's

chronic ailments from August 2013 through July 2015 was recently reviewed in the

summary judgment phase of his 2015 SCI Greene Action. In granting summary

judgment as to the many ailments of which Plaintiff has been complaining throughout

his series of litigations, this Court concluded that:

> The undersigned has reviewed all of the various materials that Plaintiff
> has submitted, along with his medical records, and nothing therein shows
> that Plaintiff suffered from an actual serious medical condition of which
> he complained during the time period in question with the exception of
> his eye cataracts for which he was evaluated by outside specialists and
> received surgical intervention in 2014 and 2015. . . . The only evidence of
> a serious medical need during the time period at issue is Plaintiff's own
> characterization of his medical complaints, which the contemporary and
> objective evidence does not substantiate. Plaintiff's refusal to accept the
> medical diagnoses of medical professionals does not elevate what appears
> to be hypochondria into a serious medical need requiring unnecessary

> treatment.  At most, Plaintiff has only alleged that the moving Defendants
> in this case differ with him on whether he needs treatment for medical
> problems that he has self-diagnosed and for which there is no clinical
> evidence to support.

2015 SCI Greene Action, ECF No. 168 at 14-15.

As Plaintiff himself repeatedly acknowledges, the restorative scope of medical treatment for many of his conditions – related to his age and general health – is self-limited.  That is, it is not always medically possible, as Plaintiff is well aware, to alleviate all symptoms or discomfort, nor is it always possible to prevent further deterioration of, for example, hearing or vision.  The Court further notes, therefore, that in the event of summary judgment pleadings in the action *sub judice* it will look specifically to evidence of, *e.g.*, a new/differing/subsequently evolved/"serious" medical condition in the relevant subsequent time period.[19]

With respect to the second requirement, a prison official acts with "deliberate indifference" "if he knows that [an] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  Deliberate indifference is a subjective standard and one fundamentally different than medical negligence.  It requires obduracy and

---

[19] Despite their substantially – indeed, perhaps entirely – redundant nature, the Court has differentiated Plaintiff's deliberate indifference claims against the remaining charged Defendants from those claims dismissed as redundant under Section III(B) *supra*.  Unlike claims based on the same alleged violation dates and/or on the continuation of the same conduct under the same circumstances and seeking the same relief (as, *e.g.*, continued denial of further laser surgery or of desired level of provision of requested religious literature, or continued rejection of grievances which request monetary damages or are duplicative), these claims do not – without further record development – foreclose the possibility of a change (*i.e.*, in serious medical condition) which could affect determination of their viability on summary judgment.  The Court here also notes, however, that consideration of the evidence on summary judgment will be properly informed by the observations made in its rulings in Plaintiff's 2015 SCI Greene Action, regarding Plaintiff's apparent hypochondria and mental health impairments. ECF No. 168.

wantonness that constitutes recklessness or a conscious disregard of a serious risk. *Rouse*, 182 F.3d at 197 (citing *Farmer v. Brennan*, 511U.S. 825, 842 (1994)). Deliberate indifference to a prisoner-plaintiff's serious medical needs consists of "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." *Pearson*, 850 F.3d at 534 (quoting *Estelle*, 429 U.S. 104-105). That denial or delay must be motivated by "non-medical factors". *Pearson*, 850 F.3d at 537. Accordingly, courts have found deliberate indifference under the following combined circumstances: (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. *Lanzaro*, 834 F.2d at 347; *Pearson* at 538; *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).

Prison administrators cannot, however, be found deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer*, 991 F.2d at 69. "If a prisoner is under the care of medical experts . . . a non-medical prisoner official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer, supra*). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirements of  deliberate indifference." *Id.* at 236.

Plaintiff alleges that Defendants knowingly, for unconstitutional reasons such as avowed retaliation and racial discrimination, impeded his access to and/or refused to provide him with medical care while he was, *e.g.*, experiencing excruciating/substantial pain, excreting blood or pus, pleading/begging for assistance and/or pain medication. Illustrative details of Plaintiff's allegations are set forth in Section I, *supra*. Taking his assertions as true, Plaintiff has sufficiently alleged that Defendants "intentionally den[ied] . . . [Plaintiff] access to medical care" and, consequently, acted with "deliberate indifference." *Estelle*, 429 U.S. at 104-05. Thus, the remaining Defendants' Motions to Dismiss Plaintiff's Amended Complaint will be denied as they relate to Plaintiff's Eighth Amendment denial of medical care claim.

### E. Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. The Equal Protection Clause, however, "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Att'y Gen.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Accordingly, to state a cognizable equal protection claim, a plaintiff "must allege that he is a member of a protected class, similarly situated to members of an unprotected class, and treated differently from the unprotected class." *Pollack v. City of Phila.*, No. 06-04089, 2007 U.S. Dist. LEXIS 11624 at *4 (E.D. Pa. Feb. 16, 2007) (citations omitted). In addition, a plaintiff must allege that this differential

treatment was intentional. *See, e.g., McClesky v. Kemp*, 481 U.S. 279, 292 (1987) ("[A plaintiff] who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination.") Finally, because, as discussed below, Plaintiff alleges that he is an African American, which is considered a "suspect class," strict scrutiny applies to his Fourteenth Amendment equal protection claim. *See, e.g., Plyler v. Doe*, 457 U.S. 202, 217 (1982). Thus, Plaintiff need only allege that the differential treatment was "not precisely tailored to serve a compelling governmental interest." *Id.*

The essence of Plaintiff's equal protection claim is that Defendants intentionally, and for no rational reason, refused to provide Plaintiff, who describes himself as a "dark skin[ned]" African American, with medical care, but provided medical care to all non-African American inmates.  In particular, Plaintiff alleges that Defendants, in responding to sick call requests, impeded those requests and/or refused to provide medical care to Plaintiff while "successfully providing care to all non-African American inmates.[20]

Taking these allegations as true, Plaintiff has alleged that (1) he is an African American (i.e., he is a member of a protected class);[21] (2) Defendants refused to provide

---

[20] Here, just as in his "template" 2017 SCI Somerset Action, Plaintiff, more specifically, alleges that Medical Defendants provided medical care to "all other inmates, especially white inmates." *See, e.g.*, ECF No. 63 at ¶ 228. As Plaintiff reiterates claims of racial bias throughout his Amended Complaint, the Court leniently understands this language to mean "all other [non-African American] inmates, especially white inmates."  Plaintiff also asserts a bald allegation of racial motivation in cell assignment/housing in his surviving claims against Bowers.  The Court expects to also consider this allegation on summary judgment.

[21] Following the Court's guidance on his unnecessary assertion of a "class of one" equal protection claim in his 2015 SCI Greene Action, *see, e.g.*, ECF No. 63 at ¶ 226, in addition to a claim of race discrimination, Plaintiff no longer advances that additional claim.

him with medical care but provided all non-African American inmates with medical

care (*i.e.*, treated him differently from similarly-situated individuals); (3) because he is

African American (*i.e.*, intentional discrimination); and (4) there was no rational reason

for the differential treatment (and, thus, the classification clearly is not precisely tailored

to serve a compelling government interest).[22]

This is sufficient, at the Rule 12(b)(6) stage, to state an equal protection claim on

the basis of race.

### F. First Amendment Free Exercise of Religion

The First Amendment provides, in relevant part, that "Congress shall make no

law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."

U.S. CONST. AMEND. I. Because "[t]here is no iron curtain drawn between the

Constitution and the prisoners of this country," *Wolff v. McDonnell*, 418 U.S. 539, 555-56

(1974), prisoners, like all persons, possess a right to practice their religion under the

First Amendment. *Bell v. Wolfish*, 441 U.S. 520, 544 (1979). This constitutional right,

although not entirely extinguished, is, however, lessened in the prison context, where

legitimate penological interests must be considered when assessing the constitutionality

of official conduct. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Consequently, in order to

establish a free exercise of religion claim, a plaintiff "must show that the [defendants]

burdened the practice of his religion by preventing him from engaging in conduct

---

[22] As noted *supra*, to the extent Plaintiff purposefully or inadvertently continues to include in his lengthy, intermingled, repetitious Amended Complaint, seemingly stray references to discrimination on the basis of religion or age, it contains absolutely no factual basis for either, and such references are disregarded by the Court, which concludes – as it has done before – that Plaintiff alleges a racial classification.

mandated by his faith without any justification reasonably related to legitimate penological interests." *Heleva v. Kramer*, No. 08-03408, 2009 WL 1426759 (3d Cir. 2009) (citing *Turner*, 482 U.S. at 89).

In asserting violations of his First Amendment right to free exercise of religion,[23] and subsequent to this Court's prior guidance regarding the necessity of direction of his claims to individual Defendants and failure to sufficiently state a First Amendment free exercise of religion claim against any of the Medical Defendants, Plaintiff now confines this claim to the Corrections Defendants. As the factual allegations are sufficient under the applicable *pro se* standard, those claims will survive this motion to dismiss. The Court observes, however, that these highly – if not entirely – redundant claims will, as with Plaintiff's Eighth Amendment claims of deliberate indifference, be informed on summary judgment by any holdings in Plaintiff's 2017 SCI Somerset Action which may have a *res judicata* effect.

### G.  First Amendment Retaliation

It is well recognized that, under the First Amendment, "[r]etaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). In order to set forth a cognizable claim for First Amendment retaliation, a plaintiff must allege that "(1) he engaged in a constitutionally protected activity; (2) he suffered, at the hands of a state

---

[23] Plaintiff has previously and continuously alleged that he is "the founder and leader of the Children of the Sun Church[,] who[se] beliefs dictate[] a daily reading of four different spiritually inspired Afro[c]entri[c] books or literature." *See, e.g.*, 2015 SCI Greene Action at ECF No. 63 at ¶ 283.

actor, adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action." *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). Further, to establish the critical element of causation, a plaintiff usually must allege "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997)).

With respect to his retaliation claim, Plaintiff broadly contends that Defendants engaged in the alleged wrongdoing (*i.e.*, violated his rights under the Constitutional Amendments) in order to penalize Plaintiff for suing officials  employed at that and other state correctional institutions, filing grievances against Defendants personally, and continuously communicating with authorities.  *See* ECF Nos. 43, 60-62.

As to the first requirement, it is well settled that not only the filing of a lawsuit, but also the filing of a prison grievance, constitutes protected activity under the First Amendment. *Fantone*, 780 F.3d at 191. Plaintiff alleges that he engaged in both of these types of protected activity. He also provides ample factual support for these allegations, including case and grievance information.

As to the second requirement, Plaintiff alleges Defendants refused to provide him with, *e.g.*, adequate, and often with any, medical care. Taking these allegations as true, Plaintiff has successfully alleged that he suffered adverse action by prison officials

"sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2005) (citing *Rauser*, 241 F.3d at 333); *Cortlessa v. Cnty. of Chester*, No. 04-01039, 2005 WL 2789178 at *7 (E.D. Pa. Oct. 26, 2005) (denying motion to dismiss retaliation claim where plaintiff alleged that he was denied adequate medical assistance by prison officials in retaliation for attempting to file grievances) (citing *Hughes v. Smith*, No. 03-05035, 2005 WL 435226 at *4 (E.D. Pa. Feb. 24, 2005)).[24]

As to the third requirement, Plaintiff alleges that Defendants explicitly explained their adverse actions as being in retaliation for his participation in this constitutionally protected activity.  Assuming the truth of these allegations, Plaintiff has alleged the requisite causation.

Therefore, the Motions to Dismiss the retaliation claims will be denied.

## IV.  CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss Plaintiff's Amended Complaint, ECF No. 43, as supplemented by Plaintiff's filings at ECF No. 60-62 is ruled upon as follows:

 ECF No. 67, by Defendants Delisma, Hutchinson, Testa, Kauffman, Fetterman and Playso (collectively represented as the "Medical Defendants"), denied.

---

[24] The Court notes that in the 2015 SCI Greene Action, Plaintiff's retaliation claims were dismissed with explication of the law that included the requirement that he have suffered a sufficiently adverse action, such as denial of medical care, in retaliation.  ECF No. 96.  Plaintiff's subsequent Complaints, in the 2017 SCI Somerset Action and *sub judice,* now recite that allegation against the Somerset Defendants. *Cf.* n. 9, *supra.*

ECF Nos. 69 and 71, by Defendants Girone and Irwin, respectively, granted as the allegations of Plaintiff's Amended Complaint are redundant with Plaintiff's claims against those Defendants currently pending on Motion for Summary Judgment before this Court in *Washington v. Barnhart et al.,* Civil Action No. 3:17-cv-00070 (the "2017 SCI Somerset Action").

ECF No. 79, by Defendants Bowers, Maust, Sroka, Snyder, Peschock, Tice and Hyde (collectively represented as the "Corrections Officers"),

(1) granted as to Defendants Maust, Sroka and Peschock as the allegations against them are redundant with those pending summary judgment in the 2017 SCI Somerset Action;

(2) granted as to any intended claim of (a) violation of the Religious Land Use and Inmate Protection Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.,* or (b) conspiracy; and

(3) denied in all other respects (with the exception of the RLUIPA claims) as to Bowers, Snyder, Tice and Hyde.

ECF No. 91, by Defendant Donnelly, granted as the allegation of Plaintiff's Amended Complaint neither states a claim against Donnelly nor suggests that one could be stated.

A separate Order will be entered.

Dated: March 31, 2021                                    BY THE COURT:

_____
LISA PUPO LENIHAN
United States Magistrate Judge

41

cc:    Henry Unseld Washington
       AM-3086
       S.C.I. Somerset
       1600 Walters Mill Rd
       Somerset, PA 15510
       *Via First Class U.S. Mail*

       Counsel for Defendants
       *Via Electronic Mail*