**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HENRY UNSELD WASHINGTON, | } | No. 3:19-cv-00196-LPL |
| | } | |
| Plaintiff, | } | Magistrate Judge Lenihan |
| | } | |
| vs. | } | |
| | } | |
| KANSKY DELISMA, WILLIAM L. BOWERS, | } | |
| PHILLIP MAUST, HEIDI SROKA, ROBERT | } | |
| SNYDER, R. PESCHOCK, J. GIRONE, ELLIS | } | |
| KAUFFMAN, RICHARD IRWIN, ROXANNE | } | |
| PLAYSO, LARENE DONNELLY, JAMES | } | |
| FETTERMAN, RICHARD HUTCHINSON, DAKOTA | } | |
| TESTA, ERIC TICE and BRIAN P. HYDE, | } | |
| | } | *Electronically Filed.* |
| Defendants. | } | |

**BRIEF IN SUPPORT OF CORRECTIONS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**FACTUAL HISTORY**

Plaintiff, Henry Unseld Washington (hereinafter "Plaintiff"), is a prisoner presently incarcerated at the State Correctional Institution at Somerset ("SCI-Somerset"). Plaintiff initiated this *pro se* civil rights action on November 12, 2019, by filing a Complaint without a Motion for Leave to Proceed *in forma pauperis*. See [ECF No. 1]. A Motion for Leave to Proceed *in forma pauperis* [ECF No. 2] was subsequently filed on November 13, 2019. Plaintiff was then granted *in forma pauperis* status on November 14, 2019, see [ECF No. 4], and the Complaint [ECF No. 5] was docketed that same date.

The Complaint [ECF No. 5] identified a number of defendants, including several DOC officials and employees from SCI-Somerset, as well as several medical providers also assigned to SCI-Somerset. The Complaint appeared to raise a number of claims related to Plaintiff's medical care and treatment at SCI-Somerset. Plaintiff had previously filed a Complaint in this Court at No. 3:17-cv-00070-KRG-LPL, which identified many of the same defendants as named in this

case.  That case was filed on or about April 28, 2017, and has since resolved by way of summary

judgment in favor of the Defendants.[1]

Pursuant to a Text Order [ECF No. 41] issued on May 26, 2020, Plaintiff filed an Amended

Complaint [ECF No. 43] on June 1, 2020.  After the Court noted some irregularity with Plaintiff's

Amended Complaint [ECF No. 43], see Text Order [ECF No. 58], Plaintiff subsequently filed

three separate Supplements to his Amended Complaint, see [ECF Nos. 60, 61, 62].  Collectively,

those documents[2] have been referred to as Plaintiff's "Amended Complaint[3]."

Five Motions to Dismiss were filed by the Defendants [ECF Nos. 67, 69, 71, 79, 91].

Plaintiff opposed said Motions, and this Court issued a Memorandum Opinion [ECF No. 109],

granting in part and denying in part Defendants' various Motions.  With respect to the Corrections

Defendants, this Court specifically found as follows:

> (1) granted as to Defendants Maust, Sroka and Peschock as the
> allegations against them are redundant with those pending summary
> judgment in the 2017 SCI Somerset Action;
> (2) granted as to any intended claim of (a) violation of the Religious
> Land Use and Inmate Protection Act ("RLUIPA"), 42 U.S.C. §
> 2000cc et seq., or (b) conspiracy; and
> (3) denied in all other respects (with the exception of the RLUIPA
> claims) as to Bowers, Snyder, Tice and Hyde.

[ECF No. 109, at p.41].  Accordingly, Plaintiff's remaining claims are (1) Eighth Amendment

Denial of Medical Care against Bowers, Tice & Hyde; (2) Fourteenth Amendment Equal

Protection against Bowers, Tice, Snyder, & Hyde; (3) First Amendment Free Exercise Clause

against Bowers, & Tice; and, (4) First Amendment Retaliation against Bowers, Snyder, Tice, &

---

[1] See Docket for No. 3:17-cv-00070-KRG-LPL, at [ECF Nos. 272, 276-277].
[2] Totaling 56 pages, four-parts [ECF Nos. 43, 60, 61, 62], and 423-paragraphs.
[3] Throughout this Brief, the four ECF Nos. that comprise Plaintiff's Amended Complaint will be cited to as "Am. Comp.," followed by the appropriate ¶ cite.

Hyde.  It is on these remaining claims for which Corrections Defendant now move for summary judgment.

## STANDARD OF REVIEW

In ruling on a motion for summary judgment, there is a threshold inquiry as to the need for a trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Summary judgment is appropriate "…if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. Rule 56; Celotex Corporation v. Catrett, 477 U.S. 317, 325 (1986).

The party moving for summary judgment bears an initial burden of showing the absence of any genuine issues of fact; the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  Anderson, 477 U.S. at 250.  The existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the required showing is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-248.

Rule 56 does not allow a non-moving party to rely only on bare assertions, conclusory allegations, or suspicion in resisting a motion for summary judgment.  Fireman's Insurance Company of Newark v. DeFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Instead, a court will conclude there is no issue for trial unless evidence in the record would allow a jury to return a verdict for the non-moving party.  Anderson, 477 U.S. at 249.  A court considers the elements of a plaintiff's *prima facie* case under the substantive law when ruling on a motion for summary judgment. Anderson, 477 U.S. at 248.  Summary judgment must be granted "…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." <u>Celotex Corporation</u>, 477 U.S. at 322.

Speculation or surmise is no substitute for personal knowledge and is not sufficient to create a genuine issue of material fact to survive a summary judgment motion, even if the plaintiff has sworn to that speculation. <u>Davis v. Harlow</u>, 2014 WL 4250382 at *4 (W.D. Pa. 2014) (citing <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888 (1990); <u>Goenaga v. March of Dimes Birth Defects Foundation</u>, 51 F.3d 14, 18 (2d Cir. 1995); <u>Curl v. International Business Machines Corp.</u>, 517 F.2d 212, 214 (5th Cir. 1975); <u>Manganaro v. Delaval Separator Co.</u>, 309 F.2d 389, 393 (1st Cir. 1962)).

A party cannot rely on hearsay evidence, including declarations, to survive a motion for summary judgment. <u>United States v. Goss</u>, 2015 WL 1944985 at *5-6 (M.D. Pa. 2015) (collecting cases).

There is no genuine issue of material fact when no reasonable jury could find for the non-moving party, including when the record evidence is demonstrably false. Hence, a district court may disregard the factual averments of a summary judgment respondent if they are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." <u>Mills v. City of Harrisburg</u>, 589 F.Supp.2d 544 (M.D. Pa. 2008) (citing <u>Scott v. Harris</u>, 550 U.S. 372 (2007)).

## <u>ARGUMENT</u>

### I.   <u>Plaintiff's claims are barred by Res Judicata</u>

A claim is barred by *res judicata* under Pennsylvania law when the current action and a prior action share the following four conditions: "(1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." <u>Turner</u>, 449 F.3d at 548. Res judicata bars a later action on all or part of a claim which was

4

the subject of the first action.  "Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action."  Turner at 548 (quoting Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (Pa. 1995)).

Res judicata applies even if a plaintiff attempts to present a different legal theory in the second action.  It gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding.  Lampon-Paz v. Department of Homeland Security, 612 Fed.Appx. 73 (3d Cir. 2015) (citing United States v. Athlone Indus., Inc., 746 F.2d 977, 983 (3d Cir. 1984); CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 194 (3d Cir.1999); Turner at 548 (quoting Balent, 669 A.2d at 313).)

The purpose of res judicata is to preclude parties from contesting matters that they have already had a full and fair opportunity to litigate, to protect their adversaries from the expense and vexation attending multiple lawsuits, to conserve judicial resources, and to foster reliance on judicial action by minimizing the possibility of inconsistent decisions.  Lampon-Paz (citing Montana v. United States, 440 U.S. 147, 153–54 (1979)).  The court is to take a "broad view" of what constitutes the same cause of action, based on the "essential similarity" of the underlying events.  Sheridan v. NGK Metals Corp., 609 F.3d 239, 260 (3d Cir. 2010).

As this Court is most certainly aware, Plaintiff a long history of both incarceration and litigation.  Plaintiff has been in the custody of the Pennsylvania Department of Corrections ("DOC") since 1978 [ECF 109, at p. 3, n.1].  He has made use of that time by filing numerous[4], lengthy[5], and often duplicitous complaints against individuals in the various facilities of his

---

[4] It is believed that at least the following cases were before this Court specifically: Washington v. Folino, 11-cv-01046; Washington v. Gilmore, 15-cv-01031; and Washington v. Barnhart, 17-cv-00070

[5] Plaintiff has admitted to reusing his Complaint as a "template."  Said template generally includes 40+ pages and hundreds of single spaced handwritten paragraphs that are incredibly difficult to read and decipher.

incarceration. Plaintiff's complaints co-mingle his other varying constitutional claims with allegations of race, religious, or aged based retaliation or discrimination. Most recently, Plaintiff's case at 3:17-cv-00070-KRG-LPL ("2017 Action") was summarily dismissed by this Court, following motions by all parties. The 2017 Action raises similar, often identical claims to the instant action, and names eleven of the sixteen Defendants named in the instant action. Included in the eleven duplicitously named Defendants are three of the four remaining Corrections Defendants: Bower, Snyder, and Hyde.

A review of the following summarization of Plaintiff's claims in both the 2017 and 2019 Actions, separated by Defendant, will clearly evidence that Plaintiff's claims in the instant action have previously been raised and disposed of by this Court.

### A.    Defendant Bowers

**Bowers (Eighth Amendment)**:

- <u>2017</u> – Bowers was deliberately indifferent to Plaintiff's continuous "dreams-n vision" of medical professionals assaulting him [2017 Action, ECF No. 63, at ¶ 199]; notwithstanding his having been directed to move Plaintiff's cell [<u>Id</u>., at ¶¶ 200, 202] Bowers failed to move Plaintiff's cell, which caused him further visions and dreams [<u>Id</u>., at ¶¶ 211, 213].

- <u>2019</u> – Bowers was deliberately indifferent to Plaintiff's recurring nightmares, "psychological affliction," and advancing dementia; notwithstanding having been directed to move Plaintiff's cell by unnamed psychologists [2019 Action, at ¶105-112, 206].

**Bowers (Fourteenth Amendment)**:

- <u>2017</u> – Bowers refused to change Plaintiff's cell because of his race [2017 Action, ECF No. 63, at ¶201-02] while simultaneously moving white inmate, and informing Plaintiff that he was motivated by his race in refusing to do so [<u>Id</u>., at ¶¶ 212-13].

- <u>2019</u> – Bowers assigned other inmate, especially white inmates "to the cell of their choice," and denied that same curtesy to Plaintiff for "race retaliation" [2019 Action, at ¶¶ 207-08].

**Bowers (First Amendment Free Exercise):**

- <u>2017</u> – Bowers named in paragraph 280 of Plaintiff Amended Complaint [2017 Action, ECF No. 63] under Plaintiff's Free Exercise claim, without specification of exactly how Bowers violated said right.

- <u>2019</u> – Bowers denied Plaintiff his religious practice for a period of "700 days" on a daily basis by denying him the right to extra material in his cell for "race retaliation" [Am. Compl., at ¶¶ 209-10, 253, 282-3].[6]

**Bowers (First Amendment Retaliation):**

- <u>2017</u> – Plaintiff based his retaliation claim in this case on Bowers failure to move Plaintiff's cell [2017 Action, ECF No. 63, at ¶ 264].

- <u>2019</u> – Plaintiff based this retaliation claim on Bowers having removed Plaintiff from the RTU [Am. Compl., at ¶ 421].

## B.     Defendant Snyder

**Snyder (First Amendment Retaliation**):

- <u>2017</u> – On April 8, 2017, Snyder provided protection for white inmate and let two white inmates steal his books, allowing this to happen to Plaintiff for race retaliation [2017 Action, ECF No. 63, ¶¶ 269, 336].

- <u>2019</u> – On and since April 8, 2017, Snyder let white inmate steal Plaintiff's religious books for race retaliation [Am. Compl., at ¶¶ 215-16, 284-86, 420]

---

[6] It is important to note that in the Memorandum Opinion on the five summary judgment motions in Plaintiff's 2017 case, this Court cited Plaintiff's failure to direct specific allegations at each individual Defendant as one reason for the dismissal of his Free Exercise claim.

**Snyder (Fourteenth Amendment)**:

- <u>2017</u> – On April 8, 2017, Snyder let white inmates steal Plaintiff's religious books while making racially charged statements [2017 Action, ECF No. 63, at ¶ 269, 334].  On April 8, 2017, Snyder also provided protection to other inmates, "especially white inmates" [<u>Id</u>. at ¶ 336].

- <u>2019</u> – On and since April 8, 2017, Snyder has allowed white inmates to steal Plaintiff's religious books for reasons of Plaintiff's race. [Am. Compl., at ¶¶ 215- 16, 284-86, 420.

### C.     Defendant Tice

While Defendant Tice was not named in Plaintiff's 2017 Action, a number of the allegations raised against Tice in the instant action are identical to those raised against others in his previous actions.

### D.     Defendant Hyde

**Hyde (Eighth Amendment):**

- <u>2017</u> – Hyde regularly discarded sick call requests by Plaintiff on a weekly basis [2019 Action, ECF No. 63, at ¶¶ 73, 239].  Lengthy factual discussion about an eye surgery that Plaintiff does not raise in 2019 Action.

- <u>2019</u> – Hyde discarded sick call requests on January 1, 2019, September 17, 2019, & "probably discarded" sick requests between May 6-8, 2019 [Am. Compl., at ¶¶ 139-40, 152-55]. Hyde called Plaintiff into his office and told him to stop submitting sick calls [<u>Id</u>., at ¶ 167].  Hyde saw numerous abuses and failures in terms of Plaintiff's medical care, and failed to remedy any [<u>Id</u>., at ¶¶ 186-90, 394].

**Hyde (Fourteenth Amendment):**

- <u>2017</u> – Hyde intentionally discriminated against Plaintiff by failing to process sick requests for Plaintiff while continually processing sick requests for other white, "especially white inmates" [2017 Action, ECF No. 63, at ¶¶ 237-39].

- <u>2019</u> – Hyde failed to provide medical care to Plaintiff, or process Plaintiff's sick requests while continuously processing sick call request for other inmates, especially white inmates [Am. Compl., at ¶¶ 242-43].

**Hyde (First Amendment Retaliation):**

- <u>2017</u> – Hyde provided access to care for other inmates, but failed to do so for Plaintiff because of retaliation [2017 Action, ECF No. 63, at ¶¶ 238-39].

- <u>2019</u> – Hyde refused Plaintiff access to medical care via sick call requests in retaliation [Am. Compl., at ¶¶ 242-43, 301].

## II. <u>Defendants are entitled to Summary Judgment on Plaintiff's Claims because he did not Exhaust Administrative Remedies</u>

It appears that Plaintiff <u>may</u> have (Defendants are not conceding this point) exhausted administrative remedies for his deliberate indifference claims against Defendant Hyde (via Grievances 838489 & 840441)).  Therefore, they are not contesting exhaustion of administrative remedies for those particular claims.  However, Plaintiff has not exhausted administrative remedies for the balance of his claims as he did not request monetary damages and/or he failed to name any Defendants in any particular grievance. See the final section of the Concise Statement of Undisputed Material Facts ("SOMF").  Therefore, Defendants are entitled to summary judgment due to lack of proper exhaustion.

The Prison Litigation Reform Act (PLRA) provides:

No action shall be brought with respect to prison conditions under section 1983 of this title by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).  The Supreme Court has held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes."  Porter v. Nussle, 534 U.S. 516, 516, 122 S.Ct. 983, 984 (2002).  Exhaustion of administrative remedies in §1997e(a) cases is mandatory and no case may be brought until the inmate-plaintiff has exhausted all available administrative remedies.  See Booth v. Churner, 532 U.S. 731, 739, 121 S.Ct. 1819 (2001) (emphasis added).  Accordingly, "it is beyond the power of the court to excuse compliance with the exhaustion requirement."  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000); Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000) aff'd, 532 U.S. 73 (2001).

Proper exhaustion, in accordance with the DOC's grievance procedures, is required, or else the grievant has procedurally defaulted and failed to exhaust his administrative remedies. Woodford v. Ngo, 548 U.S. 81 (2006); Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004).  In order to properly exhaust as to a particular issue or claim or a particular defendant, the inmate-plaintiff is required to name that issue or claim or future defendant in the operative grievance or else the grievance is procedurally defective as to that issue, claim, or future defendant.  Boyd v. U.S., 396 Fed. Appx. 793, 796 (3d Cir. 2010) ("[T]o pursue a claim in federal court based on retaliation, he must first have exhausted administrative remedies for that claim. Winning on one claim does not excuse failure to exhaust on a different claim that is factually related."); Stewart v. Kelchner, 358 Fed. Appx. 291, 296-97 (3d. Cir. 2009) ("[I]n the March 2005 grievance, Stewart complained only of the allegedly inadequate medical treatment he received for his MRSA infection. Stewart did not make any reference to the allegedly unsanitary and overcrowded conditions that he claims gave rise to the alleged MRSA epidemic, or to any other action that he attributes to Kelchner in this §1983 action. Because the unprocessed grievance did not raise Stewart's claim against Kelchner, it cannot provide a basis for concluding that he exhausted his available remedies as to this claim."); Spruill, 372 F.3d at 234 (inmate-plaintiff is required to name individuals who are later sued in

grievance or else grievance is procedurally defective as to those individuals); Payne v. Duncan, 692 Fed.Appx. 680 (3d Cir. 2017).

Further, in order to exhaust his administrative remedies, an inmate must fully and properly exhaust all available process. Nyhuis, 204 F.3d at 67 ("exhaustion of *all* administrative remedies [is] mandatory"); Spruill, 372 F.3d at 227-28. An inmate has exhausted his administrative remedies "whenever there is no further process available to the inmate within the grievance system (which would happen if, say, an inmate fails to file an administrative appeal)." Spruill, 372 F.3d at 227-28. Indeed, even if an inmate attempts to appeal to final review but does not comply with the proper procedure in all respects, he has not properly exhausted. Mack v. Klopotoski, 540 Fed. Appx. 108 (3d Cir. 2013) (inmate who appealed to final review but submitted handwritten copy of intermediate appeal rather than photocopy did not properly exhaust). In addition, rejection of a grievance appeal at final review for failing to comply with grievance procedures is not proper exhaustion, and does not serve to exhaust administrative remedies. Spearman v. Morris, 643 Fed.Appx. 82 (3d Cir. 2016) (affirming 2015 WL 6604312).

DC-ADM 804, which is the Department of Corrections' policy governing inmate grievances, provides, with regard to requesting relief in grievances, "If the inmate desires compensation or other legal relief normally available from a court, the inmate *must* request the specific relief sought in his/her initial grievance." In accordance with this requirement, the grievance form provides the following instruction: "State all relief that you are seeking." This mandatory language has been held by the Courts to require an inmate who seeks legal relief from a Court to state in the grievance what relief is sought (e.g. monetary relief) or else he has not properly exhausted administrative remedies as to any legal remedies not mentioned in that grievance. Wright v. Sauers, 2017 WL 3731957 (W.D. Pa. 2017) affirmed by Wright v. Sauers, 729 Fed.Appx. 225 (3d Cir. 2018); Smith v. DOC, 2018 WL 279363 (W.D. Pa. 2018); Mobley v.

Snyder, 2015 WL 5123909 at *7-9 (M.D. Pa. 2015) (favorably cited by Mayon v. Capozza, 2017 WL 476790 at *8 (W.D. Pa. 2017)); Sanders v. Beard, 2013 WL 1703582 at *6 (M.D. Pa. 2013); Collins v. Walsh, 2012 WL 3536803 at *3-4 (M.D. Pa. 2012).

The mandatory language in DC-ADM 804 quoted above was added to the policy in response to the Third Circuit's decision in Spruill v. Gillis, 372 F.3d 218, 233-34 (3d Cir. 2004). In Spruill, the Third Circuit rejected an exhaustion defense based on the claim that an inmate must include a request for money damages in his grievance based on the discretionary language of the policy in effect at that time which stated, "The inmate may include a request for compensation or other legal relief normally available from a court." Since the decision in Spruill, the language of the policy has changed and courts interpreting the language of the policy after Spruill have found the requirement to include a request for compensation to be mandatory.

As Plaintiff did not request monetary damages and/or did not name any remaining Corrections Defendants in his grievances (except as provided by the first paragraph in this section), Defendants are entitled to summary judgment.

Likewise, the remainder of this Brief will evidence that Defendants are also entitled to summary judgment on all claims on the merits.

III.     **Defendants Hyde, Tice and Bowers are entitled to Summary Judgment on Plaintiff's Eighth Amendment Deliberate Indifference/Denial of Medical Care Claim**

Plaintiff's Eighth Amendment claims of deliberate indifference, and denial of medical care survived Corrections Defendants Motions to Dismiss as to Defendants Hyde, Tice, and Bowers.

Not every claim by a prisoner that he has not received adequate medical treatment states a constitutional violation. Estelle v. Gamble, 429 U.S. 97, 105 (1976). Rather, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A "serious" medical condition is one "such that a failure to treat can be expected

to lead to substantial and unnecessary suffering, injury, or death." Tsakonas v. Cicchi, 308 Fed.Appx. 628, 632 (3d Cir. 2009) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir.1991)).

"Deliberate indifference" requires obduracy and wantonness that constitutes recklessness or a conscious disregard of a serious risk. Rouse, 182 F.3d at 197 (citing Farmer v. Brennan, 511 U.S. 825, 842 (1994)). Deliberate indifference is a subjective standard, and in order to satisfy it, an inmate-plaintiff must show that a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842.  To plead deliberate indifference, a plaintiff must show that each particular defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and … must also draw the inference." Malles v. Lehigh Co., 639 F.Supp.2d 566, 579 (E.D. Pa. 2009) (citing Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997)).

The "deliberate indifference" standard in the context of medical treatment is fundamentally different than medical negligence.  This is a difference in kind and not merely a difference in degree.  That is, it does not hold that if a medical professional makes a mistake, it is negligence, but if the medical professional makes a very bad mistake, it is deliberate indifference.  Rather, allegations that would allege a medical malpractice negligence claim never rise to the level of deliberative indifference and are therefore not sufficient to state a constitutional claim.  Estelle, 429 U.S. at 106; Rouse, 182 F.3d at 197.  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Pearson v. Prison Health Service, 850 F.3d 526, 534 (3d Cir. 2017) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  "Federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Id. at 539 (quoting United States ex. rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

13

Deliberate indifference to a prisoner-plaintiff's serious medical needs consists of "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." Pearson, 850 F.3d at 534 (quoting Estelle, 429 U.S. 104-105). That denial or delay must be motivated by "non-medical factors". Pearson, 850 F.3d at 537. Accordingly, courts have found deliberate indifference in the following circumstances: (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. Lanzaro, 834 F.2d at 347; Pearson at 538; Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993)

Disagreement over whether medical treatment was proper "does not support a claim of an eighth amendment violation." Pearson, 850 F.3d at 535 (citing Monmouth County Correctional Institute v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)). A contention that more or different treatment should have been provided is a "classic example of a matter for medical judgment" that does not rise to the level of a constitutional violation. Estelle at 107; White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "It is well established that as long as a physician [or other medical professional] exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Id. (quoting Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990)). An "error in medical judgment" is insufficient to show deliberate indifference and cannot serve as the basis for an Eighth Amendment claim. Durmer, 991 F.2d at 69; White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990); Lee v. Jin, 2014 WL 3778326 at *3 (W.D. Pa. 2014).

If a plaintiff claims that the adequacy of his care constituted a constitutional violation, the case will only proceed to trial is there is a genuine issue of fact on *both* the adequacy of care *and* the

defendant's intent.[7,8]  This is because "the mere receipt of inadequate medical care does not itself amount to deliberate indifference – the defendant must also act with the requisite state of mind when providing that inadequate care."  Pearson at 535 (citing Durmer, 991 F.2d at 69 n.13). Moreover, the Eighth Amendment cannot be violated for refusing to give medical care when the plaintiff refuses to comply with a legitimate treatment protocol due to his own divergent opinion. Iseley v. Beard, 200 Fed.Appx. 137, 142 (3d Cir. 2006).

Once a prisoner plaintiff comes under the care of medical professionals, a non-medical prison official cannot be deliberately indifferent for failing to intervene in the medical treatment unless that non-medical official has reason to believe or actual knowledge that prison medical providers are mistreating the prisoner.  Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); Spruill v. Gillis, 372 F.3d 218, 236-37 (3d Cir. 2004);  Roberts v. Tretnick, 2014 WL 4218249 at *3-4 (W.D. Pa. 2014); Giles v. Medical Contractors CMS, 723 F.Supp.2d 710, 717 (D. Del. 2010).

The Third Circuit has explained that, following the division of labor in a prison, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. Spruill, 372 F.3d at 236. It continued, "Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain the division of labor.  Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment

---

[7] In Pearson, the Court makes a distinction between on one hand, a constitutional claim involving the denial or delay of medical care and, on the other hand, a constitutional claim involving the adequacy of medical care.  In both types of claims, the deliberate indifference standard is the same and must be met.  In the adequacy of care claim, there is an additional requirement that the plaintiff prove that the care was, in fact, inadequate.

[8] As an example, in Pearson, the only claim that survived summary judgment was one in which the nurse refused to assist the plaintiff to get into a wheelchair and made him crawl on the ground to get to it, then did not provide him any medical care throughout the night despite Plaintiff's past medical complaints and his excruciating pain.

responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability." Id.

For a corrections officer to be liable for denying a prisoner access to medical care, the inmate-plaintiff must show that the officer knew of and disregarded an excessive risk to the prisoner's health. Perkins v. Schwappach, 399 Fed. Appx. 759, 761 (3d Cir. 2010). Even if the corrections officer knew of a risk to the prisoner's health, he must still personally draw the inference that the prisoner faced a substantial risk of serious harm if medical care was denied. Id.

Initially, Plaintiff alleges that Defendants Hyde, Tice, and Bowers, were either directly or indirectly deliberately indifferent to the serious medical needs of the Plaintiff. However, as the Concise Statement [SOMF], and Plaintiff's medical records attached as Exhibit 1, 2, 3, 4, & 5 show, Plaintiff received substantial medical care, including multiple outside consultations. As for his primary medical complaints, his medical records show that he does not have Whipple's disease, and his foot calluses have been addressed multiple times with remover. Finally, he was under the medical care of many doctors and mid-level practitioners with such thorough care that non-medical personnel such as Defendants Hyde, Tice, and Bowers had no reason to believe that he was not being treated properly for his conditions. In the end, what this claim amounts to is nothing more than a disagreement on medical treatment where Plaintiff insists he has a medical condition that he does. Such a disagreement is never sufficient to state an Eighth Amendment claim.

With respect to the requirement of a serious medical condition, this Court authored a thorough Memorandum Opinion considering this specific issue as it pertained to Defendants' Motion(s) to Dismiss [ECF No. 109]. In said Opinion, this Court clearly provided what it would be looking for on summary judgment in consideration of Plaintiff's Eighth Amendment claim. [ECF 109, at p.33, n.19]. That is,"…in the event of summary judgment pleadings in the action

*sub judice* it will look specifically to evidence of, e.g., a new/differing/subsequently evolved/ 'serious' medical condition in the relevant subsequent time period." [ECF No. 109, at p.33].

A review of the Corrections' Defendants Exhibits, specifically Plaintiff's medical records, will provide a clear indication that there are no new, serious medical conditions alleged by Plaintiff in this action. Each time Plaintiff submits a sick call slip and is seen by medical, he presents the same issues, accompanied by a repeated insistence that he has been diagnosed with Whipple's Disease, although there is no medical evidence of same. [SOMF, at ¶¶ 3, 9, 14, 24, 26, 32, & 49]. Plaintiff has also been seen by a number of consulting physicians outside the DOC; and, even underwent a dental procedure in December of 2019, which was completed by and outside physician. [SOMF, at ¶ 27]. A clear review of the record and Corrections Defendant Concise Statement will show that Plaintiff has failed to raise any new, different, or evolved serious medical conditions sufficient to sustain an Eighth Amendment claims against the remaining Corrections Defendants. Further, a review of the record will show that the Corrections Defendants, and DOC medical staff continuously attempt to address Plaintiff's complaints, while attempting to impose upon him the seriousness of misusing the sick call slip system. [SOMF, at ¶ 25].

There is no evidence to support a finding of deliberate indifference as against the remaining Corrections Defendants. Plaintiff's general allegations that Defendant Hyde ignored or otherwise discarded sick call requests made by Plaintiff [Am. Compl., at ¶¶ 139-140, 178, 182-83] are both unsupported by the record, and duplicitous to his previous claims made by him, and dismissed by this Court. Plaintiff also alleges that he was called to meet with Hyde who told him to stop submitting sick calls [Am. Compl., at ¶ 167]. However, as this Court is aware; and is clearly evidenced by the record, and supported by Plaintiff's assertions, Plaintiff has abused and misused the sick call request system by photocopying the sick call form with the same list of ailment, and

simply changing the dates [SOMF, at ¶ 25].  To that end, Hyde was merely counseling Plaintiff on the proper use of the sick call forms, not denying him care altogether [SOMF, at ¶ 25].

Plaintiff's general allegations that Defendant Tice dismissed Plaintiff's ailments, denied him medical care, and disregarded his foot fungus [Am. Compl., at ¶¶ 116-119, 240-41] are unsupported by the record evidence that Plaintiff was being seen by medical, and his foot issues were repeatedly addressed [SOMF, at ¶¶ 5, 6, 13-15, 24, 26, 31, 33, 44].

Plaintiff's allegations that Defendant Bowers was deliberately indifferent to Plaintiff's nightmares, psychological affliction, advancing dementia; and that he did not change Plaintiff's cell locations notwithstanding unnamed "psychologists" numerous reminders to do so are without record support. [Am. Compl., at ¶¶ 105-112]

Additionally, a review of Plaintiff's medical records and Corrections Defendants' Concise Statement will indicate that although Plaintiff complains of a number of things noted in said records, he at no point informs medical providers that he was in serious need of assistance that was denied to him by the Corrections Defendants.  In fact, the evidence of record shows just how often Plaintiff's sick call requests were followed through on.  [SOMF ¶¶ 1-49].

Accordingly, Defendants Bowers, Tice, and Hyde are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

### IV.    Defendants Hyde, Tice, Bowers, and Snyder are entitled to Summary Judgment on Plaintiff's Fourteenth Amendment Equal Protection Claims

Plaintiff claims that every action allegedly taken against him was motivated by racial animus.  Claims of racial discrimination by prisoners fall under the equal protection clause.  Bacon v. Minner, 229 Fed.Appx. 96 (3d Cir. 2007) (citing Turner v. Safley, 482 U.S. 78, 84 (1987)).

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which is "essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne

18

Living Center, 473 U.S. 432, 439 (1985).  The general rule is that the state action is valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate government interest.  City of Cleburne, 473 U.S. at 440.  This general rule only gives way when the classification is suspect, in which case a higher level of scrutiny applies.  Id.  Race is a suspect class, including in prisons, and strict scrutiny is applied such that any racial classifications must be narrowly tailored measures that further compelling governmental interests.  Johnson v. California, 543 U.S. 499, 505 (2005).

There is no evidence whatsoever that any Corrections Defendant did something or did not do something with regard to Plaintiff because he is African American or that he was treated differently than any other inmate regardless of race in the decisions made with respect to him.  A lack of evidence that a defendant has treated the plaintiff any differently than other members of his class is fatal to an equal protection claim. Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  This is true even when a suspect class is involved.  City of Cleburne at 439; Whitney v. Wetzel, 649 Fed.Appx. 123, 128 (3d Cir. 2016).  Therefore, Corrections Defendants are entitled to summary judgment on Fourteenth Amendment Equal Protection claims.

## V.   Defendants Bowers and Tice are entitled to Summary Judgment on Plaintiff's First Amendment Freedom of Religion Claim

Plaintiff alleges that Defendants Tice and Bowers violated his Free Exercise Clause rights by denying Plaintiff additional religious materials. Plaintiff asserts that Defendant Bowers prevented Plaintiff from exercising his religion for "700 days" by denying him access to additional religious materials. [Am. Compl. ¶ 283].  Plaintiff alleges that Defendant Tice restricted Plaintiff's access to religious materials for reasons of "race, retaliation, religious belief, penalty for communications with authorities." [Am. Compl. ¶ 281].  The amount of property Plaintiff may hold in his cell and the rate at which he may exchange property is dictated by a Settlement Agreement. [SOMF, at ¶ 60-66].  As is the case in Plaintiff's 2017 action, the issue in the present

case is that Plaintiff desires to violate the Settlement Agreement and store additional property in his cell. Plaintiff has not been denied access to his religious materials, rather he has been denied materials in excess of the Settlement Agreement. Defendants have simply complied with the Settlement Agreement, and are therefore entitled to summary judgment.

The First Amendment provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST. AMEND. I. Because "[t]here is no iron curtain drawn between the Constitution and the prisoners of this country," Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974), prisoners, like all persons, possess a right to practice their religion under the First Amendment. Bell v. Wolfish, 441 U.S. 520, 544 (1979). This constitutional right, although not entirely extinguished, is, however, lessened in the prison context, where legitimate penological interests must be considered when assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Consequently, in order to establish a free exercise of religion claim, a plaintiff "must show that the [defendants] burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to legitimate penological interests." Heleva v. Kramer, No. 08-03408, 2009 WL 1426759 (3d Cir. 2009) (citing Turner, 482 U.S. at 89).

If there is a prison regulation that impinges on an inmate's constitutional right to free exercise of his religion and if the belief is sincerely held and religious in nature, the analysis then turns to the four-factor test set forth in Turner v. Safley, 482 U.S. 78, 89 (1987) and applied to the free exercise clause in O'Lone to determine whether the restriction on the prisoner's free exercise of religion is constitutional.  This four-factor test requires courts to consider: (1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison

resources; and (4) whether obvious, easy alternatives exist.  DeHart v. Horn, 390 F.3d 262, 268 (3d Cir. 2004); Sharp v. Johnson, 669 F.3d 144 (3d Cir. 2012).

The first factor is foremost, but it does not subsume the rest of the inquiry.  Sutton v. Rasheed, 323 F.3d 236, 253 (3d Cir. 2003).  For the second factor, the court must consider whether the inmate has "alternative means of practicing his or her religion generally, not whether the inmate has alternative means of engaging in any particular practice." Sutton, 323 F.3d at 255, quoting DeHart, 227 F.3d at 55.  "[W]here other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." DeHart, 227 F.3d at 53 (quoting Turner, 482 U.S. at 90).  The third and fourth factors "focus on the specific religious practice or expression at issue and the consequences of accommodating the inmate for guards, for other inmates, and for the allocation of prison resources." DeHart, 227 F.3d at 57.

The terms of the Settlement Agreement, rather than a prison regulation, dictate Plaintiff's religious property restrictions [SOMF, at ¶ 62].  Legitimate government and penological interests preclude Plaintiff from storing additional materials in his cell. Turner, 482 U.S. at 89. First, allowing Plaintiff additional property storage accommodations beyond those outlined in the Settlement Agreement would cause a fire hazard, as well as egress and ingress issues. Corrections officials are responsible for inmate safety and allowing more property in Plaintiff's cell interferes with that responsibility. Simply put, allocating additional resources to Plaintiff beyond those Plaintiff already agreed upon in the Settlement Agreement overburdens guards and prison resources. DeHart, 227 F.3d at 57.

Furthermore, Plaintiff has already taken advantage of alternative means to practice his religion. Sutton, 323 F.3d at 255, quoting DeHart, 227 F.3d at 55. The alternative means are outlined in the Settlement Agreement, which Plaintiff had deemed acceptable. Plaintiff was

granted religious accommodations relating to the storage of property and exchange of property beyond those permitted by prison regulations. Now, Plaintiff seeks to treat the accommodations outlined in the Settlement Agreement as the floor, rather than the ceiling, and extract additional accommodations. No additional alternatives exist beyond those already outlined in the Settlement Agreement. Sutton, 323 F.3d at 255, quoting DeHart, 227 F.3d at 55.

Defendants have complied with the terms of the Settlement Agreement and have not violated Plaintiff's First Amendment Rights. In accordance with the Settlement Agreement, Plaintiff has been permitted to hold additional property in his cell. Plaintiff now claims that his Free Exercise Clause rights are being violated because he is not permitted accommodations beyond the Settlement Agreement. Legitimate penological and government interests, including inmate safety and the prevention of a fire hazard, preclude Plaintiff from storing any additional property in his cell. No additional alternatives exist, and Plaintiff has not articulated why the current arrangement fails to satisfy his needs. For the foregoing reasons, Defendants are entitled to summary judgment.

## VI.  Defendants Hyde, Bowers, Tice, and Snyder are entitled to Summary Judgment on Plaintiff's First Amendment Retaliation Claims

In his Amended Complaint, Plaintiff claims that all the actions allegedly taken against him were motivated by both a retaliatory and racial animus; sometimes combining both alleging actions taken for "race retaliation."  Defendants address the retaliation portion of this rote assertion in this section.  Defendants are entitled to summary judgment on all Plaintiff's retaliation claims.

To establish a claim for retaliation, an inmate must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Rauser v. Horn, 341

F.3d 330 (3d Cir. 2001); Davis v. Harlow, 2014 WL 4250382 at *4 (W.D. Pa. 2014); Laurensau v. Pluck, 2013 WL 4779010 at *10 (W.D. Pa. 2013).

If a plaintiff is able to meet his *prima facie* case, the burden then shifts to the defendants to prove by a preponderance of the evidence that they would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.  Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001); Davis at *4.

Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner.  Laurensau at *11 (citing Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) and Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)).

The adverse action must be sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  Mitchell, 318 F.3d at 530; Wilson v. Marrow, 917 A.2d 357, 364 (Pa. Cmwlth. 2007); Huertas v. Sobina, 476 Fed.Appx. 981, 984 (3d Cir. 2012).  This is an objective inquiry, so the peculiarities of a plaintiff's subjective state of mind are not relevant.  Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012).  Change in custody level and a cell move is not an adverse action as a matter of law.  Mays, 86 A.3d at 949.

Speculation or surmise is no substitute for personal knowledge and is not sufficient to state a retaliation claim.  Davis v. Harlow, 2014 WL 4250382 at *7 (W.D. Pa. 2014) (citing Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995); Curl v. International Business Machines Corp., 517 F.2d 212, 214 (5th Cir. 1975); Manganaro v. Delaval Separator Co., 309 F.2d 389, 393 (1st Cir. 1962)).

Plaintiff alleges that Defendants denied him medical care, and access to the RTU gym in retaliation for his various lawsuits and with a racial animus therefor.  As detailed extensively

23

already and in the Concise Statement, Plaintiff received an enormous amount of medical care. He was not refused any medical care, so there was no adverse action and no causation.

With respect to the the RTU, Plaintiff was voted off the RTU such that he could no longer attend the RTU gym [SOMF, at ¶¶ 56-58]. He alleges this was undertaken in retaliation for his protected activity, and for "race retaliation." First, Plaintiff has no protected right to be housed on the RTU[9]. To that end, the adverse action alleged by him, i.e. his removal from the RTU, is not an adverse action as a matter of law sufficient to sustain for trial a cause of action for retaliation.

Plaintiff was not removed from the RTU, and refused access to the RTU gym because of any protected activity he undertook, because of any race retaliation, or for any other retaliatory reason. Insofar as there need be a reason provided, Plaintiff was removed from the RTU because of his disruption to the program, and refusal to participate in same [SOMF, at ¶¶ 55-59]. Plaintiff has not been able to point to, or otherwise produce any evidence to the contrary outside of his baseless allegations in his Amended Complaint. Therefore, Corrections Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

## V.    Conclusion

For the reasons stated above, all of the Corrections Defendants are entitled to summary judgment on all of the claims asserted against them.

---

[9] Inmates have no right to a particular cell. Brown v. Sobina, 2009 WL 5173717 at *8 (W.D. Pa. 2009) (citing Rhodes v. Chapman, 452 U.S. 337 (1981)); Smith v. Thomas, 2014 WL 2091869 at *7 (M.D. Pa. 2014) (citing Sheehan v. Beyer, 51 F.3d 1170, 1174 (3d Cir. 1995) for proposition that inmate has no right to be in one particular cell versus another); Toussaint v. Good, 276 Fed.Appx. 122, 124 (3d Cir. 2008); Lim v. Cruz, 2015 WL 1185982 at *7 (M.D. Pa. 2015); ("[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted."); Podhorn v. Grondolsky, 350 Fed. Appx. 618, 620 (3d Cir. 2009) ("[P]risoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program."). Rather, "the prison has a penological interest in the housing placement of its inmates and '[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise.'") Thomaston v. Meyer, 519 Fed. Appx. 118, 119 (3d Cir. 2013) (quoting McKune, 536 U.S. at 39).

Respectfully submitted,

JOSH SHAPIRO
Attorney General


_____s/ *Amanda M. Scarpo*_____

Office of Attorney General          Amanda M. Scarpo
Litigation Section                  Deputy Attorney General
1521 Waterfront Place               Attorney I.D. No. 318596
Mezzanine Level
Pittsburgh, PA 15222                Scott A. Bradley
Phone: (412) 565-3017               Senior Deputy Attorney General
Fax:    (412) 565-3019

Date:  October 20, 2021

## CERTIFICATE OF SERVICE

I, Amanda M. Scarpo, Deputy Attorney General for the Commonwealth of Pennsylvania, hereby certify that on October 20, 2021, I caused to be served a true and correct copy of the foregoing document titled **BIREF IN SUPPORT OF CORRECTIONS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** to the Plaintiff via first class mail, postage prepaid to the following address:

*Smart Communications/PA DOC*
*Henry U. Washington/AM-3086*
*SCI-Somerset*
*PO Box 33028*
*St. Petersburg, Florida 33733*

By:     /s/ *Amanda M. Scarpo*
AMANDA M. SCARPO
Deputy Attorney General
Attorney ID 318596

Office of Attorney General
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222
Phone: (412) 565-3017

ascarpo@attorneygeneral.gov

Date:  October 20, 2021