## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HENRY UNSELD WASHINGTON, | } | No. 3:19-cv-00196-LPL |
| | } | |
| Plaintiff, | } | Magistrate Judge Lenihan |
| | } | |
| vs. | } | |
| | } | |
| KANSKY DELISMA, WILLIAM L. BOWERS, | } | |
| PHILLIP MAUST, HEIDI SROKA, ROBERT SNYDER, | } | |
| R. PESCHOCK, J. GIRONE, ELLIS KAUFFMAN, | } | |
| RICHARD IRWIN, ROXANNE PLAYSO, LARENE | } | |
| DONNELLY, JAMES FETTERMAN, RICHARD | } | |
| HUTCHINSON, DAKOTA TESTA, ERIC TICE and | } | |
| BRIAN P. HYDE, | } | |
| | } | *Electronically Filed.* |
| Defendants. | } | |

## CORRECTIONS DEFENDANTS' CONCISE
## STATEMENT OF UNDISPUTED MATERIAL FACTS

AND NOW, come the Defendants, Bowers, *et al.* ("the Corrections Defendants"), by

their attorneys, Amanda M. Scarpo, Deputy Attorney General, and Scott A. Bradley, Senior

Deputy Attorney General, pursuant to Local Rule 56.1, hereby submit the within Statement of

Material Facts in support of their Motion for Summary Judgment.

### Plaintiff's Medical Issues

1.      Prior to the time period identified below, Plaintiff received copious amounts of

medical care throughout his time period with the DOC (since 1978).  A summation of said

medical care, beginning in July, 2015, through December, 2018, is provided via the Concise

Statement filed at docket number 3:17-cv-70, and attached hereto as Exhibit 6-6.4. See Exhibit 6,

at ¶¶ 1-88.

2.      Although Plaintiff claims otherwise, he has been seen a number of outside

consulting physicians. See Exhibit 3.

3.      On January 3, 2019, Plaintiff was seen by Dr. Delisma for nonspecific abdominal complaints which were being conservatively treated with an anti-acids/anti abdominal gas regimen.  Plaintiff requested treatment for Whipple's disease, but indicated that he was never diagnosed with same, merely told in the past that he may have it. See Exhibit 5, at 117.

4.      On January 18, 2019, Plaintiff underwent a Preventative Health Risk Assessment. See Exhibit 5, at p. 102.

5.      On February 4, 2019, Plaintiff presented to medical with foot ulcers that weren't presently bleeding, and alleged that he had difficulty breathing the week prior, though not on that specific day.  He was given "mole skin" for his foot ulcers, and told to return if breathing issues persisted.  See Exhibit 5, at p. 100.

6.      On February 6, 2019, Plaintiff received insoles for his shoes in response to his complaints of foot pain.  See Exhibit 5, at p. 98.

7.      On February 8, 2019, Plaintiff submitted a sick call request[1] complaining of his usual non-specific list of chronic ailments, and was seen by medical as a result.  Said issues were addressed accordingly.  See Exhibit 5, at pp. 95-97.

8.      On February 20, 2019, Plaintiff was seen by Dr. Delisma for complaints related to his abdomen, diarrhea, itchiness between his toes, and deteriorating vision in his right eye. Plaintiff refused glasses.  See Exhibit 5, at p. 92.

9.      On February 20, 2019, Plaintiff again insisted that he has Whipple's disease. Medical indicates that he is being considered for an outside GI consultation. See Exhibit 5, at p. 91-92.

---

[1] This is generally the tool utilized for inmates to communicate with staff.  There is no policy at the DOC to maintain inmate request slips such that the only evidence of Plaintiff's sick call requests is that which is contained in the medical records. See Exhibit 26.

10.      On February 20, 2019, Plaintiff is seen by an Ophthalmologist.  See Exhibit 5, at pp. 85-90.

11.      On March 6, 2019, Plaintiff was seen by a Dermatologist. See Exhibit 5, at p. 79.

12.      On March 22, 2019, Plaintiff was seen for his vision and non-specific GI complaints again.  Plaintiff was told that medical is waiting on ophthalmology relative to his vision issues, and that Dr. Delisma is considering a colonoscopy for Plaintiff's GI complaints and will follow up with him on April 2. See Exhibit 5, at p. 78.

13.      On April 2, 2019, Dr. Delisma followed up with Plaintiff relative to his previously complained of issues.  Dr. Delisma indicates that he is seeking approval for an endoscopy relative to Plaintiff's GI complaints; that Plaintiff refused glasses, but will follow up with ophthalmology; and, that Plaintiff is prescribed special shoes for his foot issues.  See Exhibit 5, at p. 74.

14.      On April 12, 2019, Plaintiff reported to medical following a sick call, presenting GI issues, foot pain, and an insistence that he should be treated for Whipple's disease.  Plaintiff has been repeatedly seen, and his complaints have been addressed in the past by multiple providers and specialists.  See Exhibit 5, at p. 71.

15.      On April 22, 2019, Plaintiff received special shoes to address his foot pain.  See Exhibit 5, at p. 69.

16.      On April 30, 2019, Plaintiff was seen by Dr. Delisma to follow up on his abdominal pain.  Dr. Delisma addresses his complaints and notes that treatment will be conservative as Plaintiff is "non toxic appearing." See Exhibit 5, at p. 64-65.

17.       On May 30, 2019, Plaintiff was seen by Dr. Delisma to follow up on Plaintiff's list of chronic complaints. See Exhibit 5, at p. 60.

18.     On June 17, 2019, medical does not see Plaintiff following a sick call submitted by him because it is notably the same carbon copy sick call request that Plaintiff has repeatedly submitted before, and that Dr. Delisma is following.  Nonetheless, Plaintiff is scheduled for a follow up on June 27, 2019. See Exhibit 5, at p. 59.

19.     On June 27, 2019, Plaintiff is seen by Dr. Delisma to follow up on Plaintiff's list of chronic complaints.  Plaintiff declines to have a colonoscopy. See Exhibit 5, at p. 56-57.

20.     On August 1, 2019, Plaintiff is seen by Dr. Delisma to follow up on Plaintiff's calluses.  See Exhibit 5, at p. 41.

21.     On August 27, 2019, Plaintiff received new compression stockings to address his coronary artery disease and thyroid problems.  See Exhibit 5, at p. 37.

22.     On October 2, 2019, Plaintiff is seen by Dr. Delisma to follow up on his list of chronic complaints previously addressed and monitored by Dr. Delisma.  See Exhibit 5, at p. 32-34.

23.     Plaintiff underwent an x-ray and saw a GI specialist in 2018. See Exhibit 2.

24.     On November 7, 2019, Plaintiff reported to medical following a sick call, presenting GI issues, foot pain, and an insistence that he should be treated for Whipple's Disease. See Exhibit 1, at pp. 52.

25.     On December 5, 2019, Plaintiff was counseled regarding proper use of sick call forms.  At that time, Plaintiff was using the same photocopied sick call form, with the same list of ailments, and simply changing the date and time. See Exhibit 1, at p. 49.

26.     On December 19, 2019, Plaintiff was seen by medical, and presented the same recurring list of complaints including foot callouses, GI/abdominal issues, dry skin, refusal to

take thyroid medications, and insistence that he has Whipple's Disease.  See Exhibit 1, at pp. 46-47.  Plaintiff outright refused colonoscopy.  Id.

27.    In December, 2019, Plaintiff underwent a dental procedure to remove an abscess. See Exhibit 1, at pp. 44-45.

28.    On January 2, 2020, Plaintiff reported to medical following an emergent request by a Captain concerning Plaintiff's sore throat, among emerging concerns of COVID.  On exam, Plaintiff admitted he did not have a sore throat, but a hoarse voice which has admittedly been his base line for twenty years. See Exhibit 1, at pp. 38-40.

29.    Plaintiff's abdominal, GI complaints have routinely been non-specific and poorly defined.  See Exhibit 1, at p. 8, 11, 16, 17, 47, & 57.

30.    On January 9, 2020, Plaintiff refused a C-scope for exploration of GI complaints. See Exhibit, at p. 41.

31.    On February 3, 2020, Plaintiff reported to medical following a sick call.  At that time, his edema, foot calluses and non-specific GI complaints were addressed with him.  See Exhibit 1, at pp. 16-17.

32.    Medical staff, including Dr. Delisma, were aware of and monitoring Plaintiff for Whipple's Disease; although there is no evidence in any medical records that Plaintiff was ever diagnosed with same. See Exhibit 1, at pp. 11, 12-13, 17, 40, 70, 84.

33.    Plaintiff was seen by Dr. Delisma on February 17, 2020, at which time Plaintiff presented with foot calluses, GI complaints, low energy, and concerns relative to his cognitive state. See Exhibit 1, at pp. 8.

34.    Plaintiff was ordered a therapeutic diet. See Exhibit, at pp. 6-7.

35.     On February 20, 2020, Plaintiff reported to medical following a sick call, and presented significant agitation that he was not being seen by a physician, but was being triaged by a nurse. See Exhibit 1, at p. 5.

36.     At that same appointment, the nurse made multiple suggestions related to treatment, all of which were refused by the Plaintiff. Id.

37.     On February 26, 2020, Plaintiff reported to medical following a sick call, and presented no new ailments, appeared ambulatory, presented no signs of distress or injury. See Exhibit 1, at p. 4.

38.     Plaintiff was scheduled for a follow-up with Dr. Delisma.  Id.

39.     Plaintiff has repeatedly refused his thyroid medication, though he does not provide any reason why.  See Exhibit 4.

40.     Plaintiff has not recently seen an outside GI specialist because his complaint of GI trouble are routinely non-specific. See Exhibit 1, at p. 8 & 11.

41.     On March 4, 2020, Plaintiff submitted a sick call, but was not transported to medical because he was in activities.  See Exhibit 1, at p.1.

42.     In light of said activities, it is obvious Plaintiff's sick complaints were not emergent.

43.     Plaintiff was repeatedly provided with compression socks to treat his lower extremity pain.  See Exhibit 1, at pp. 17, 57-58.

44.     Plaintiff has repeatedly been provided callous remover to treat his foot pain. See Exhibit 1, at pp. 8-9, 17-18, 35-36, 47-48, & 53.

45.     All of Plaintiff's medical complaints have been very closely monitored by medical staff at SCI-Somerset, and outside medical providers. See Exhibits 1, 2, & 3.

46.     Each time Plaintiff submits a sick call request, he is taken to medical. <u>See</u> Exhibit 1.

47.     Each time Plaintiff appears in medical, his concerns are heard and addressed. <u>See</u> Exhibit 1.

48.     Plaintiff becomes agitated when he does not receive the answer he is looking for from medical providers, or other DOC employees. <u>See</u> Exhibit 1, at p. 4.

49.     Plaintiff has been unwilling to entertain any suggestions for different treatments to give insight into his underlying problems, insisting instead that he has Whipple's disease.  <u>See</u> Exhibit 1, at p. 5.

<u>**Plaintiff's Cell Location**</u>

50.     From October 2, 2019, through March 6, 2020, there is no indication throughout Plaintiff's medical records that he should be placed in a different cell for any reason. <u>See</u> Exhibit 1.

51.     From July 2, 2018, through October 2, 2019, there are no indications throughout Plaintiff's medical records that he should be placed in a different cell for any reason.  In fact, the only couple mentions of the word "cell," referenced Plaintiff getting out to engage in activities, and his own concerns over having his cell moved.  <u>See</u> Exhibit 5, at p. 158-159.

52.     Even considering said concerns as voiced by the Plaintiff, medical staff made no notation relative to a need to move Plaintiff's cell. <u>See</u> Exhibits 1 & 5.

53.     The issues related to Plaintiff's cell placement prior to the aforesaid time period were addressed, and explained via the Concise Statement filed at docket number 3:17-cv-70. <u>See</u> Exhibit 6, at ¶¶ 89-105.  The Concise Statement was considered by this Court, and Judgment was subsequently summarily entered against Plaintiff in that action. <u>See</u> Exhibit 7.

54.     There is no evidence of racial motivation for Plaintiff's cell placement.

## Removal from the RTU

55.     Plaintiff was placed in RTU in an attempt to facilitate the needs of his mental health issues. <u>See</u> Exhibit 8.

56.     Plaintiff refused to participate in and was disruptive of the programming in the RTU. <u>See</u> Exhibit 8.

57.     As a result, Plaintiff was voted off the RTU. <u>See</u> Exhibit 8.

58.     Because Plaintiff was no longer housed on the RTU, he was not permitted to use the gym facilities. <u>See</u> Exhibit 8.

59.     There is no evidence of retaliation or racial animus in the decision to remove Plaintiff from the RTU, and/or the RTU gym facilities. <u>See</u> Exhibit 8.

## Property in Plaintiff's Cell

60.     Plaintiff entered into a Settlement Agreement at Case Number 3:01-cv-02432-JEJ. <u>See</u> Exhibit 9.

61.     Said Settlement Agreement dictates the amount of property, including religious books that Plaintiff is permitted to have in his cell which is in excess of the amount generally permitted by DOC policies.  <u>See</u> Exhibit 9, at pp. 4-5.

62.     Said Settlement Agreement provides religious accommodations to Plaintiff in addition to those provided by DOC policy. <u>See</u> Exhibit 9, at p. 5-9.

63.     For reasons of fire and safety hazard prevention, some amount of Plaintiff's property had to be moved out of his cell. <u>See</u> Exhibit 11.

64.      Said property is safely and securely kept for Plaintiff in the facility's Receiving and Discharge ("R&D") area. <u>See</u> Exhibit 11.

8

65.     Plaintiff is permitted to access said property, and exchange out what he needs. <u>See</u> Exhibit 11.

66.     This is all done in an effort to ensure safety in the facility, while best adhering to the terms of the Settlement Agreement at Exhibit 9.

### Grievances

67.     DC-ADM 804 is the Department of Corrections' policy governing inmate grievances. <u>See</u> Exhibit 10.

68.     DC-ADM 804 provides, with regard to requesting relief in grievances, in mandatory language, "If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." See Exhibit 10, at p. 5 (¶11d).

69.     In accordance with this requirement, the grievance form provides the following instruction: "State all relief that you are seeking." See Exhibit 10, at p. 13.

70.     It also states, "The inmate shall identify individuals directly involved in the event(s)." See Exhibit 10, at p. 5 (¶11b).

71.     In order to fully exhaust the grievance process, the inmate must appeal all the way to the Secretary's Office of Inmate Appeals and Grievance ("SOIGA"). <u>See</u> Exhibit 10, at p.5.

72.     Plaintiff's grievance history was initially covered in the Concise Statement of Material Fact filed by Corrections Defendants in Plaintiff's 2017 Action.  See Exhibit 6, at ¶ 133-147.

73.     Plaintiff has continued to file Grievances since the last of those covered in Exhibit 6.

74.     Grievance 730068 does not request monetary damages. <u>See</u> Exhibit 12.

75.     In Grievance 770810 Plaintiff complains of adequate medical care, and while he mentions Defendant Tice, the grievance is not actually about him. See Exhibit 13.

76.     Grievance 782252 complains that Hyde discarded sick calls slips and requests monetary damages. See Exhibit 14.

77.     Grievance 801220 complains of medical care related to Plaintiff's hearing, and mentions Boyd and Sledge, neither of which are named Defendants. See Exhibit 15.

78.     Grievance 804964 complains of inadequate medical care, and while Plaintiff mentions Tice, the grievance is not actually about him.  See Exhibit 16.

79.     Grievance 807334 complains of inadequate medical care, but fails to name any individual against whom his allegations are raised. See Exhibit 17.

80.     Grievance 817817 complains of religious material in Plaintiff's cell, names Tice, and requests monetary damages; however, Plaintiff failed to appeal to SOIGA. See Exhibit 18.

81.     Grievance 824181 about Dr. Delisma's care mentions Tice, but is not really about him. See Exhibit 19.

82.     Grievance 830855 about his removal from the RTU only names a "Ms. Stevens," though that individual is not a named Defendant in this action.  See Exhibit 20.

83.     Grievance 838489 complains that Hyde directed a nurse to act with racist motivations, and it requests monetary relief.  See Exhibit 21.

84.     Grievance 840441 complains that Hyde was disrespectful to Plaintiff's family, discarded Plaintiff's sick calls, denied Plaintiff medical care, and requested monetary relief.  See Exhibit 22.

85.     Grievance 845379 complains of issues with Grievance 840441, and was for that reason, dismissed. See Exhibit 23.

10

86.     Grievance 847694 complains of Dr. Delisma's care, and names an "Officer Lapley" though that individual is not a named Defendant in this action.  See Exhibit 24.

87.     Grievance 849309 complains of inadequate medical care, but names no acting individuals.  See Exhibit 25.   Inmate hand

Respectfully submitted,

JOSH SHAPIRO
Attorney General


s/ *Amanda M. Scarpo*

Office of Attorney General                Amanda M. Scarpo
Litigation Section                        Deputy Attorney General
1521 Waterfront Place                     Attorney I.D. No. 318596
Mezzanine Level
Pittsburgh, PA 15222                      Scott A. Bradley
Phone: (412) 565-3017                     Senior Deputy Attorney General
Fax:    (412) 565-3019

Date:  October 20, 2021

## CERTIFICATE OF SERVICE

I, Amanda M. Scarpo, Deputy Attorney General for the Commonwealth of Pennsylvania, hereby certify that on October 20, 2021, I caused to be served a true and correct copy of the foregoing document titled *CONCISE STATEMENT OF UNDISPUTED MATERIAL FACT* to the Plaintiff via first class mail, postage prepaid to the following address:

*Smart Communications/PA DOC*
*Henry U. Washington/AM-3086*
*SCI-Somerset*
*PO Box 33028*
*St. Petersburg, Florida 33733*

By:     /s/ *Amanda M. Scarpo*
                AMANDA M. SCARPO
                Deputy Attorney General
                Attorney ID 318596

Office of Attorney General
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222
Phone: (412) 565-3017

ascarpo@attorneygeneral.gov

Date:  October 20, 2021